Marshall B. WOODSON, Jr., Executor of the Estate of Kenneth C. Davis, Deceased, Movant,

v.

MANHATTAN LIFE INSURANCE COMPANY OF NEW YORK, N.Y., Respondent.

No. 87–SC–247–DG.

Supreme Court of Kentucky.

Dec. 17, 1987.

Weldon Shouse, Larry C. Deener, Landrum, Shouse & Patterson, Lexington, W.R. Patterson, Jr., Landrum, Shouse & Patterson, Louisville, for movant.

J. Peter Cassidy, Jr., Stoll, Keenon & Park, Lexington, for respondent.

LEIBSON, Justice.

The movant, the Estate of Kenneth C. Davis, claims that he was a covered individual under the terms of a group life insurance policy issued to Kentucky Finance Company by the respondent, Manhattan Life Insurance Company of New York, at the time Davis was killed by his estranged wife on May 19, 1982. The policy coverage for Davis was $500,000, with $1,000,000 for double indemnity.

Prior to February 8, 1982, and for approximately 22 years, Davis had been employed by Kentucky Finance Company, a lending institution with its principal offices in Lexington, Kentucky. After various

promotions he achieved the position of General Counsel and Senior Vice–President.

On February 8, 1982, he was called before the Executive Committee of Kentucky Finance Company and told that he must resign. The sole issue in this case is whether Davis continued to be covered under his group life insurance policy thereafter and at the time he was killed three months later. This in turn depends upon evaluating his employment status following his meeting with the Executive Committee on February 8, 1982, so the content, circumstances and results of that meeting were central to the contested issue. Unfortunately, there were no minutes. Davis has been silenced by death. And the others present were hostile witnesses, officials of Kentucky Finance Company which was a defendant on the same side of the issue as Manhattan Life, only released by a directed verdict.

Davis' Estate claims that when he was killed he was on a six months salary continuation leave of absence, albeit a terminal leave, during which he remained a covered employee. This claim is supported by the contents of a resignation letter of February 26 prepared by the Executive Committee, which Davis signed, in which he resigned from "any and all positions as officer and director," but not from his employment or his other duties as an employee. Further, Robert Curtin, the Secretary/Treasurer for Kentucky Finance, a member of the Executive Committee and the person in charge of the executive payroll, used the term "severance leave" at one point in giving testimony to describe Davis' status. Specifically, Curtin testified that Davis was on a "severance leave" with pay for six months, which would be to August 8.[1] Curtin acknowledged that the company was committed to continuing to pay Davis' regular salary during this six months' period as with any other regular salaried employee, including deductions for taxes, savings plans, *and life insurance premiums*, etc.[2] The monthly premium due Manhattan Life was

---

1. Curtin later testified this description as "leave" was a "mistake."

2. We note that this six months' salary continuation period coincides with the policy provision (quoted *infra*) covering leave of absence for a period up to six months.

being remitted to and accepted by the Company at the time of Davis death. This monthly salary was then discontinued after Davis' death, which is consistent with his status as an employee on leave, but which would be inconsistent if Davis was promised a fixed sum as a severance payment.

The respondent, Manhattan Life Insurance Company, claims that Davis lost his status as a covered individual at this February 8 meeting in which the Executive Committee demanded his resignation; that termination of his employment was complete then and there; and that at the time he was killed on May 19, despite continuation of life insurance premiums paid and received, Davis had no coverage.

Davis' coverage included the option to convert from a group policy to an individual policy, but he and his company were continuing the group policy arrangement rather than undertaking this option. It was obvious that both Davis and the responsible company official thought that Davis was still a covered employee, at least until after he was killed.

Section 6 of the group policy, entitled "Termination of Individual's Insurance" enumerates four events upon which the insurance "shall automatically cease." The particular event applicable to this case is subsection (d), under which insurance ceases "on the date of termination of employment with the Policyholder." Subsection (d) then states:

"Termination of employment, for purpose of life insurance hereunder, means cessation of active work for the Policyholder as provided in Section 1 hereof entitled "Definitions", except that

. . . .

(ii) in case of the absence of an Individual from active work because of leave of absence or temporary lay-off, his employment may, for the purposes of his life insurance hereunder, be deemed to continue until terminated by the Policyholder but in no case beyond the expiration of a period of six months following the date such leave of absence or lay-off commenced."

The key language is that there is an exception to "cessation of active work" as fixing the date of termination of employment "*if* the individual is absent from active work because of leave of absence *or* temporary lay-off." (Emphasis added.) The respondent argues vehemently that both "leave of absence" *and* "lay-off" must be only temporary to qualify under this exception, that it does not apply to a terminal leave. But "leave" is *not* qualified by the word "temporary" as is the case with "lay-off." The policy language makes no distinction in the type of leave, nor does it exclude terminal leave.

The trial court submitted the case to the jury under an instruction requiring the jury to decide whether Davis' employment was "terminated on February 8, 1982," or whether he "was then granted a leave of absence as an employee of Kentucky Finance which was approved by the Executive Committee thereof and was on such leave of absence at the time of his death." The jury decided that the decedent's status was leave of absence, and found for the claimant. Manhattan Life appealed. The Court of Appeals reversed. The Court of Appeals decided that "[t]he clause providing the exceptions to automatic discontinuance of benefits because of leave of absence or temporary lay-off only becomes operative when the 'absence' is for a reason other than permanent termination." There is no such restrictive language so limiting the term "leave of absence" in the policy. Therefore, we reverse the Court of Appeals and affirm the trial court.

This is a case where there is sharp disagreement as to the facts, and even more disagreement as to what inferences from the facts are appropriate in deciding Davis' status at the time he was killed. Manhattan Life insists that the evidence is conclusive that Davis was terminated on February 8, pointing to the trial testimony of various Kentucky Finance Company officials to prove this conclusion. But Davis points to the evidence that we have referred to earlier in this Opinion as sufficient to prove his status as an employee who had been placed in a terminal leave status for six months. On appeal from a

verdict for the Estate, the only question is, was there substantial evidence to support the verdict? Conflict in the reasonable inferences to be drawn from the testimony, as well as conflicts in the testimony itself, justify submitting the case to the jury. *Murphy v. Homans*, 286 Ky. 191, 150 S.W. 2d 14 (1941). *Also, Penn Central Transportation Co. v. Skaggs*, Ky., 489 S.W.2d 26 (1973) and *Ohio Cas. Ins. Co. v. Commonwealth, Dept. of Hwys.*, Ky., 479 S.W. 2d 603 (1972). The role of the appellate court when deciding issues of this sort is limited to viewing the evidence from a standpoint favorable to the prevailing party. *Lever Bros. Co. v. Stapleton*, 313 Ky. 837, 233 S.W.2d 1002 (1950).

Manhattan Life points us to Section 1, the "Definitions" section of its policy. This defines "cessation of active work" as meaning "discontinuance of the Individual's performing all of the usual duties of his employment on a permanent full-time basis at the Member's regular place of business." As quoted above, in Section 6 termination of employment occurs upon "cessation of active work for the Policyholder ... *except that* ... in case of the absence of an Individual from active work because of leave of absence ... his employment may, for the purposes of his life insurance hereunder, be *deemed to continue*" for "a period" not to exceed "six months following the date such leave of absence ... commenced." The emphasized phrases, "except that" and "deemed to continue," establish that there is an exception while on leave and that the employee need not be performing any duties of his employment to retain coverage while in this status.

The principal thrust of the Manhattan Life's complaint that it was entitled to a directed verdict is that the policy must be read in its entirety to determine its meaning. The problem is that, absent language excluding terminal leave from the leave of absence exception, when read as a whole, the meaning of the policy urged by Manhattan Life is no more reasonable than the meaning urged by Davis' Estate.

Movant urges that the facts established Davis' status on terminal leave drawing salary and still covered within the terms of the policy that relate to "leave of absence," and further argues that if there is any doubt as to whether the policy should be interpreted this way, such doubt should be resolved in favor of the Movant. There are two prongs to this last argument which relates to the proper method for construing an insurance policy. These are:

1) The doctrine of ambiguity; and

2) The doctrine of reasonable expectations.

Turning first to the ambiguity principle, the phrase in the policy which is key to whether the decedent was a covered individual at the time he was killed is the exception to "termination of employment" upon "cessation of active work" "in case of the absence of an Individual from active work because of leave of absence." The Court of Appeals has rewritten the policy to limit leave to temporary leave that anticipates ending with return to active work and to exclude leave that anticipates ending with termination of employment. But the status while on leave is the same regardless of what the future may bring, return to duty or termination.

The Court of Appeals erred in using a restrictive interpretation. Because most insurance policies, including this one, are contracts of adhesion,[3] we recognize the doctrine of ambiguity as applicable. This doctrine holds, as stated in *Wolford v. Wolford*, Ky., 662 S.W.2d 835, 838 (1984):

"Consequently, the company must be held strictly accountable for the terms of the contract. [Case cited].

If the contract has two constructions, the one most favorable to the insured must be adopted. [Case cited]. If the contract language is ambiguous, it must be liberally construed to resolve any doubts in favor of the insured. [Case cited]."

---

**3.** "Adhesion contract. Standardized contract form offered to consumers ... on essentially 'take it or leave it' basis without affording con-

sumer realistic opportunity to bargain" over the terms (Black's Law Dictionary, 5th ed., p. 38).

The unqualified term "leave of absence," if not ambiguous, can only mean that a person is covered on any leave of absence including terminal leave. But assuming that the policy language is ambiguous, it must be interpreted against the insurance company.

The doctrine of reasonable expectations is a corollary to the rule for construing ambiguities. In *Simon v. Continental Insurance Co.*, Ky., 724 S.W.2d 210, 212 (1987), we stated that "[a]n essential tool in deciding whether an insurance policy is ambiguous, and consequently should be interpreted in favor of the insured, is the so-called 'doctrine of reasonable expectations.'" As summarized in R.H. Long's *The Law of Liability Insurance*, § 5.10B:

> "The gist of the doctrine is that the insured is entitled to all the coverage he may reasonably expect to be provided under the policy. Only an unequivocally conspicuous, plain and clear manifestation of the company's intent to exclude coverage will defeat that expectation."

The evidence is that Davis was being paid his monthly salary in the same manner as always, including deductions, at the time he was killed. Following his death his salary was discontinued. Further, the letter of resignation prepared by the company and signed by Davis states that he resigns from his duties as an "officer and director" of the company but does not otherwise exclude his status as an employee. The responsible company official, Executive Committee Member Robert Curtin, gave testimony supporting a continuing employment relationship:

> "... he is on a six month salary continuation which will make it August 6th [corrected to August '8'] as the official termination as an employee."

Manhattan Life insists that this salary was only "severance pay," citing cases to the effect that receiving severance pay does not extend employment. This argument assumes facts which are in dispute. The factual issue was whether this was not just severance pay but severance leave. The nature of the payments as continuation of salary including deductions, stopping with the employee's death, rather than as a fixed sum due and payable regardless of death, supports movant's interpretation. Indeed, this was the interpretation given to his employment status by the company officials responsible for his pay as well as by Davis until *after* his death and this present dispute over payment. He was carried and treated as one on continued employment in a terminal leave status. The evidence to the contrary presented by Manhattan Life from company officials testifying after this dispute arose could do no more than create an issue of fact for the jury, an issue which was resolved by the jury in favor of Davis' Estate. The "reasonable expectations" of *both* Davis and the company up to the time that Davis was killed were that his status was covered by the policy if death should occur, as it did.

On this appeal the respondent, Manhattan Life, has not questioned the trial court's instructions as fairly stating the issue. There is sufficient evidence in the record to support the jury's finding that the decedent was on leave of absence at the time he was killed. Therefore, the decision of the Court of Appeals is reversed. The judgment of the trial court is affirmed.

STEPHENS, C.J., and GANT, LAMBERT, VANCE and WINTERSHEIMER, JJ., concur.

STEPHENSON, J., dissents by separate opinion.

STEPHENSON, Justice, dissenting.

Because of the peculiar circumstances surrounding the departure of Davis from the finance company, this is an appealing case in which to say that the estate should recover on the policy. However, I cannot ignore the plain meaning of "leave of absence" in the policy.

In this type group policy, all of the testimony and facts concerning events after he permanently left the employment are irrelevant. The policy contract is with Davis, and the terms of the contract are binding. Counsel for Davis' estate agreed that paying the insurance premiums after Davis left and was on terminal leave did not bind

the insurance company. Neither did any other act of Davis or the finance company. In this type group policy, the insurance company looks to the finance company for the payment of premiums and relies on the terms of the policy as to coverage.

There is no question that Davis had permanently left the finance company. He had rented an office for the practice of law. It is not disputed that he was not returning. It is further clear that he had ceased *active work* for the finance company. By this clause, Davis had terminated employment and coverage.

The exception clause provided an escape from the above provision for *leave of absence* or *temporary layoff.* These two exceptions terminated if the status lasted more than six months.

The plain, ordinary usage of *leave of absence* means a leave with the plain connotation that at the end of the leave there will be a return to work for the company. The plain meaning of *temporary layoff* is that it is contemplated that there will be a return to work for the company.

*Layoff* means separation with no present prospect of return. Addition of *temporary* plainly means that a return is contemplated.

The majority makes much of the fact that *leave* was not qualified by the word *temporary,* as was layoff. To require temporary *leave of absence* would be redundant, as all is covered by the six-month limit.

Both clauses contemplate a return to work which does not fit Davis at all. If he was on leave, it was *terminal leave* which is not the same as *leave of absence.* I am amazed that the English language can be tortured to the extent as done by the majority.

The fact that the majority states that the policy does not exclude terminal leave is irrelevant. The policy does not exclude a lot of things. It does plainly say what it includes, and Davis does not fit the plain language of the policy.

Eventually, it will be necessary to have a court dictionary if the court continues to give words a meaning other than generally understood meanings.

The ambiguity mentioned by the majority is in the opinion, not in the policy, resulting in a rewriting of the policy by the court, leave of absence meaning the same as terminal leave.

Here, there is an "unequivocal, conspicuous, plain, and clear manifestation of the company's intent to exclude coverage" and defeat the doctrine of reasonable expectation.

The majority had to create an ambiguity, where none existed, to invoke the doctrine and use the doctrine of reasonable expectation as a further reason for imposing liability.

I do not believe we should rewrite insurance policies to impose liability.

Accordingly, I dissent.