Misty Dawn DAVIS, an infant under eighteen years of age, by and through the Guardian, FARMERS BANK & CAPITAL TRUST CO. OF FRANKFORT, KENTUCKY, Plaintiff–Appellant,

v.

KENTUCKY FINANCE COS. RETIREMENT PLAN; Kentucky Finance Cos. Retirement Plan, Retirement Committee; Kentucky Finance Co., Inc.; and Central Bank & Trust Co., Defendants–Appellees.

No. 88–6067.

United States Court of Appeals, Sixth Circuit.

Argued May 22, 1989.

Decided Oct. 12, 1989.

Rehearing Denied Dec. 4, 1989.

William R. Meredith (argued), Harrodsburg, Ky., for plaintiff-appellant.

Henry E. Kinser (argued), Kincaid, Wilson, Schaeffer, Hembree, Van Inwegen & Kinser, Lexington, Ky., for defendants-appellees.

Before BOGGS, Circuit Judge; ENGEL, Senior Circuit Judge * and GIBSON, District Judge.**

BOGGS, Circuit Judge.

Misty Dawn Davis (Davis) appeals from the district court's summary judgment denying her death benefits as her father's beneficiary. Her father, Kenneth Davis, a former employee of Kentucky Finance

---

* The Honorable Albert J. Engel became Senior Circuit Judge on October 1, 1989.

** The Honorable Benjamin F. Gibson, United States District Judge for the Western District of Michigan, sitting by designation.

Company, Inc. (KFC), was murdered by his wife. The dispute concerns whether the decedent still was employed by KFC at the time of his death. The district court denied Davis's claim for death benefits, finding that the Retirement Committee (the Committee) which administers the KFC retirement plan was correct in deciding that Kenneth Davis was no longer an employee at the time of his death for purposes of the plan. The court also held that determination of this issue was not collaterally estopped on the basis of a decision by the Kentucky Supreme Court finding that the decedent still was a KFC employee at the time of his death for purposes of his life insurance policy. *Woodson v. Manhattan Life Insurance Co.*, 743 S.W.2d 835 (Ky. 1987). Finally, the court denied Davis's motion to join individual members of the Committee as defendants. We affirm.

I

Kenneth C. Davis (decedent) was an employee of KFC from 1960 to at least 1982. He resigned as an officer and director on February 8, 1982, as a result of a meeting with KFC's executive board; however, Davis claims that he did not resign as an employee of KFC at that time. Davis claims that the decedent was to be carried as an employee under a leave of absence for six additional months, at which time he would leave KFC's employ and take distribution of his retirement benefits. However, he was murdered by his wife before his retirement benefits commenced. Under Art. V, § 5.03 of the Plan, a death benefit is available to the participant's surviving spouse or dependent child, but only if the participant's employment had not been terminated at the time of his death. Section 5.01 provides that no death benefit is available if the terminated participant should die prior to the commencement of benefits and prior to filing a claim for benefits.

Plaintiff Davis, as beneficiary of decedent's death benefits, requested benefits under the Plan from KFC's Retirement Committee. The Committee denied such benefits. KFC contended that the decedent had been terminated and was therefore not an employee at the time of his death. Under that view, his death benefits had been forfeited.

Davis brought suit in district court to recover the death benefits. That court issued three memorandum opinions. On August 4, 1987, the court denied Davis's motion to join individual members of the Committee in order to seek their personal liability for extracontractual compensatory and punitive damages. On June 21, 1988, the court granted summary judgment to the defendants, denying Davis's claim for death benefits. Finally, on August 18, 1988, the court filed its order denying Davis's claim of collateral estoppel.

Misty Dawn Davis is the daughter and dependent of the decedent. The decedent was hired by KFC on March 17, 1960, and became a member of its retirement plan (the plan). As of December 31, 1981, the decedent was Senior Vice President, Legal Counsel, Director and Member of the KFC Retirement Committee. Decedent was in-house counsel for the plan, and so was well-acquainted with its provisions.

The plan was adopted originally in 1959 and was amended several times thereafter to conform with changes in the Employee Retirement Income Security Act (ERISA) enacted by Congress. The plan has specific benefit provisions for a member-employee who is terminated for a reason other than death or retirement. A member credited with five or more years' service shall be entitled to receive monthly retirement income beginning at his normal retirement date. A member who terminates employment with 15 years or more of credited service is entitled at any time after reaching age 55 to elect the immediate commencement of benefits, in compliance with the minimum vesting standards of 29 U.S.C. § 1053. The final sentence of section 5.01 of the plan provides: "Notwithstanding anything expressed or implied to the contrary, in the event a terminated Member dies prior to the beginning of the period for which benefits will be payable, no Death Benefit shall be payable under this Plan."

Death Benefits are provided for in Art. V, § 5.03 of the plan. Consistent with the above-quoted language, such benefit is available to the decedent's surviving wife or dependent child only if the decedent had not been terminated from employment. Under Art. II, § 2.35(a)(ii), an employee receives credit for service for any time attributable to a "leave of absence" granted by the employer, up to two years.

On February 8, 1982, KFC's executive board met to discuss the decedent's future with the company. KFC claims that the decedent resigned his position at that meeting and immediately opened a private law practice in Lexington, Kentucky. The details of the February 8 meeting "are not presently available;" however, Davis claims that the result was that the decedent agreed to resign as an officer and director of KFC, and the executive board agreed to carry the decedent, or caused him to believe that it so agreed, as an employee-member for six additional months. This would have allowed the decedent to attain the age of 59½ before electing, as a 100% vested member, the commencement of his retirement benefits under § 5.01, which also would have allowed the decedent to gain certain income tax advantages. KFC claims that it merely agreed to pay the decedent six months' severance pay. The decedent made no election upon the resolution of his status at the February 1982 meeting.

In an action in Kentucky state court, in which the decedent's estate sought to recover on a life insurance policy, the Fayette Circuit Court jury specifically found that the decedent was on a leave of absence granted by the executive board at the time of his death. The Kentucky Court of Appeals reversed, holding that the "leave of absence" contemplated by the policy is one in which the policy holder, the employer, and the employee intend for the absence to be temporary and that the employee will eventually return to work. However, the Kentucky Supreme Court reversed the court of appeals, finding that there was no such restrictive language in the policy and affirming the jury's verdict that the decedent was an employee of KFC on leave of absence at the time of his death. 743 S.W.2d 835 (Ky.1987).

The district court's first order resolving a number of pretrial motions is dated August 4, 1987. There, the court ruled to compel answers to an interrogatory, and denied the motion to join the individual members of the Retirement Plan Committee under Rule 19, Fed.R.Civ.P. The judge reasoned that the members of the Committee could be held personally liable for a breach of fiduciary duties to the plan but not to beneficiaries of the plan, citing 29 U.S.C. § 1109 and *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). The court further granted summary judgment to the defendants regarding four counts of the complaint that were meritless under § 1109 and *Massachusetts Mutual*. The court also denied additional requests for discovery, finding that there was not sufficient justification for delaying the proceedings. Finally, the court ruled that Davis could not amend her complaint to add claims not cognizable under ERISA. Davis argues on appeal that the judge should have allowed her to add a claim of equitable estoppel, which he held could not be raised under ERISA.

In its second opinion in this case, the trial judge granted summary judgment to the defendants, finding that the decedent was no longer an employee of KFC at the time of his death, and that because he had not elected to begin receiving benefits before his death, his beneficiary was not entitled to receive benefits. The court reasoned that the decedent could have elected to receive early retirement benefits any time after his resignation, and that his failure to do so demonstrated his intent to wait and receive full benefits at normal retirement age. Section 5.01 of the plan states that if a terminated employee dies prior to the beginning of payment of benefits, then no death benefit is payable. The court found that, in light of the plan's language and the "arbitrary and capricious" standard of review, there was no basis for reversing the Committee's interpretation of the plan as it applied to the decedent. Thus, the trial

judge entered a final judgment granting summary judgment to the defendants.

Davis then moved to alter or amend the judgment under Rule 59(e), Fed.R.Civ.P., arguing that the court was collaterally estopped from finding that the decedent was not a KFC employee at the time of his death by the Kentucky Supreme Court's decision in *Woodson*, 743 S.W.2d 835. The Kentucky Supreme Court had upheld a jury finding that the decedent was on a leave of absence from his job at KFC at the time of his death. However, the district court reasoned that *Woodson* was not controlling because it was based solely on the particular terms of the decedent's life insurance policy. The court stated that decedent's status as an employee for the purposes of a particular insurance contract did not require that he be considered an employee for all purposes. The court concluded that it was bound to uphold the Committee's decision unless it was found to be arbitrary and capricious, which it was not. Thus, the court denied the motion to alter or amend its earlier judgment.

## II

On appeal, Davis argues that the district court was in error in applying the "arbitrary and capricious" standard of review because the question of whether the decedent was an employee at the time of his death is a question of law. Further, Davis argues that, even if the court applied the correct standard, there was no evidentiary basis for the court's conclusion. In addition, Davis claims that the district court was in error when it failed to apply the doctrine of collateral estoppel to this case, and when it denied her motion to amend her complaint to add a claim of equitable estoppel. Finally, Davis avers that the district court should have allowed her to seek equitable relief in the form of extracontractual compensatory and punitive damages. KFC argues that the district court applied the correct standard, and that the Committee's decision denying Davis benefits was not arbitrary or capricious. It also claims that the court was correct regarding the applicability of collateral estoppel, eq-uitable estoppel, and equitable relief in the form of extracontractual compensatory or punitive damages.

■ The district court reviewed the Committee's denial of benefits under the arbitrary and capricious standard of review. Until the Supreme Court's recent decision in *Firestone Tire and Rubber Co. v. Bruch*, —— U.S. ——, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the law was well-settled that "the arbitrary and capricious standard applies to decisions by plan administrators under ERISA to deny benefits to particular claimants." *Varhola v. Doe*, 820 F.2d 809, 813 (6th Cir.1987); *Roberson v. General Motors Corp., Detroit Diesel Allison Division*, 801 F.2d 176, 179 (6th Cir.1986); *Cook v. Pension Plan for Salaried Employees of Cyclops Corp.*, 801 F.2d 865, 871 (6th Cir.1986); *Fielding v. International Harvester Co.*, 815 F.2d 1254, 1257 (9th Cir.1987) (citation omitted); *Holland v. Burlington Industries, Inc.*, 772 F.2d 1140, 1148 (4th Cir.1985) (citations omitted); *Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 209 (7th Cir.1985). "The arbitrary or capricious standard is the least demanding form of judicial review of administrative action." *Pokratz*, 771 F.2d at 209. "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Ibid.*

In *Cook*, 801 F.2d at 871, the issue was whether terminations due to plant closure were "discharges" within the meaning of the applicable retirement plan. In other words, just as in this case, this court was faced with determining the validity of the plan administrator's interpretation of a term used in the plan. There, this court stated that "[t]he case law is uniform, however, in holding that, under such circumstances, the deference to be accorded the [administrator] in the administration of its plan requires the court to stay its hand in the interest of efficient pension administration." *Ibid.*

However, in *Firestone*, the Supreme Court announced a departure from this rule when the plan administrator is also the employer, in cases involving challenges to

denials of benefits based on plan interpretations. —— U.S. at ——, 109 S.Ct. at 953. The Court held that a *de novo* standard of review should apply *unless* "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at ——, 109 S.Ct. at 956. In this latter circumstance, the Court held, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'factor[ ] in determining whether there is an abuse of discretion.' " *Ibid.* (quoting Restatement (Second) of Trusts § 187, Comment d (1959)).

In the instant case, section 6.08 of the plan states that

> [i]n case of any factual dispute hereunder, the Retirement Committee shall resolve such dispute giving due weight to all evidence available to it. The Retirement Committee shall interpret the Plan and shall determine all questions arising in the administration, interpretation and application of the Plan. All such determinations shall be final, conclusive and binding except to the extent that they are appealed under the ... claim procedure.

This section makes clear that the plan administrator is given great discretion to interpret the language of the plan. Thus, the district court was correct in applying the arbitrary and capricious standard to the Committee's interpretation and application of the term "employee" in the KFC plan. *Ibid.* The fact that the Retirement Committee that administers the plan is composed of management-level employees of KFC is significant only to the extent that any possible conflict of interest should be taken into account as a factor in determining whether the Committee's decision was arbitrary and capricious. *Ibid.*

In addition, this court is now reviewing the district court's granting of a summary judgment. In reviewing the grant of a summary judgment, such judgment will be affirmed if the reviewing court finds that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, this court must determine whether there is any genuine issue of material fact as to whether the Committee's decision denying benefits on the grounds that the decedent was no longer a KFC employee was arbitrary or capricious.

### III

■ The Committee based its denial of death benefits on its conclusion that the decedent was no longer a KFC employee for purposes of the plan when Davis filed her claim for benefits. The Committee found that: (1) the decedent had resigned his position with KFC effective February 8, 1982 and had started a private law practice in Lexington, Kentucky; (2) KFC agreed to pay the decedent six months severance pay; (3) Mr. Davis had no intention of returning to work for KFC, and KFC had no intention of rehiring the decedent; (4) the decedent had completed at least fifteen years of service with KFC and was over the age of 55 at the time of his resignation and so could have elected to receive early retirement benefits; (5) at the time of his death, the decedent had made no such election under the plan; and (6) section 5.01 of the plan expressly states that if a terminated employee dies prior to the beginning of payment of benefits, then no death benefit is payable. The Committee thus determined that the decedent did not qualify for death benefits under § 5.01 of the plan. Davis claims that the decedent was taking a leave of absence from KFC and thus was still employed. Further, she claims that he was receiving a salary, and not severance pay, during the six months after his departure from KFC.

Under the arbitrary and capricious standard and under the standard of review of summary judgments, there is no strong basis for overturning the Committee's determination. As in *Cook*, 801 F.2d at 870, there is some ambiguity in the plan's language. In *Cook*, the issue was what types

of terminations amounted to "discharges" under the language of the plan. *Ibid.* Here, the issue is what constitutes an "employee."

The Committee indicated that an important step in its reasoning was its finding that the decedent did not plan to return to work, and KFC had no intention of rehiring him. In fact, the decedent had begun to pursue other avenues of work before his death. As in *Firestone*, —— U.S. at ——, 109 S.Ct. at 956, and *Cook*, 801 F.2d at 871, a court reviewing the interpretation of the plan made by its administrators must defer to the administrator's construction when the plan itself commits such interpretation to the discretion of the administrator. Here, there is no inconsistency in the Committee's interpretation of the plan; Davis does not claim that the Committee's reading renders the plan somehow internally inconsistent. Nor does Davis claim that the Committee acted in bad faith. Without a showing of internal inconsistency or bad faith or some other ground for calling the Committee's determination into question, the arbitrary and capricious standard demands affirmance.

Davis's only argument apart from her challenge to the use of the arbitrary and capricious standard, put to rest by *Firestone* and the plan's clear language, is that the district court did not have enough evidence of the Committee's reasoning to assess its validity. The district court did have a comprehensive affidavit from a member of the committee, as well as other documentation in which the Committee's rationale was explained. In addition, Davis does not argue that the district court's summary of the Committee's reasoning is flawed. Thus, she cannot prevail on this issue. The district court's decision affirming the Committee's interpretation of the plan, and consequent denial of death benefits, is affirmed.

## IV

■ Davis next argues that the district court was collaterally estopped from ruling as it did in light of the Kentucky Supreme Court's decision in *Woodson*, 743 S.W.2d 835. However, even though one decision-maker's conclusion is upheld because it was based on substantial evidence, as the Kentucky Supreme Court found the jury's finding in *Woodson* was, a contrary decision by a different decisionmaker may also be upheld because the record contains substantial evidence to the contrary. The same is true even though our standard of review of the Committee's decision is the arbitrary and capricious standard—a finding of substantial evidence for one conclusion does not negate the possibility that an opposite conclusion is not arbitrary or capricious.

Further, the *Woodson* court was construing the terms of a life insurance policy, not the terms of the plan. Thus, there is no identity of issues in the two cases. *Montana v. United States*, 440 U.S. 147, 155, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979). In addition, KFC was dismissed as a party in *Woodson* before a decision on the merits was made, except to the extent that the insurance company later unsuccessfully sought indemnification from KFC for the amount awarded to Davis. 743 S.W.2d 835. Collateral estoppel requires identity of parties, *George v. United Kentucky Bank, Inc.*, 753 F.2d 50, 53 (6th Cir.), *cert. denied*, 471 U.S. 1018, 105 S.Ct. 2024, 85 L.Ed.2d 306 (1985), and also requires that the party against whom the earlier decision is asserted had a "full and fair opportunity" to litigate its claim. *Allen v. McCurry*, 449 U.S. 90, 95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). Here, there was no identity of parties, nor did the Committee have an opportunity to litigate the merits of these issues in *Woodson*.

Thus, Davis's arguments regarding collateral estoppel must fail. We affirm the decision of the district court.

## V

■ Finally, Davis claims that she should have been allowed to amend her complaint to add a claim of equitable estoppel, and that she should have been allowed to litigate her claims for extracontractual compensatory and punitive damages. She claims that the plan's ambiguity regarding this issue amounts to a misrepresentation;

that the plan members breached their fiduciary duty so egregiously that they are not entitled to the protections afforded by their status; and that the plain unfairness of the situation demands equity.

As regards any claims against the individual members of the Committee, the district court was correct when it stated that any such argument must fail under *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). There, the Supreme Court stated that, although § 502(a)(2), 29 U.S.C.A. § 1132(a)(2) "authorizes a beneficiary to bring an action against a fiduciary who has violated § 409" of ERISA, *id.* at 140, 105 S.Ct. at 3089, that duty was intended to protect "the entire plan, rather than ... the rights of an individual beneficiary." *Id.* at 142, 105 S.Ct. at 3090. The Court also noted that "the statutory provision explicitly authorizing a beneficiary to bring an action to enforce his rights under the plan ... says nothing about extracontractual damages...." *Id.* at 144, 105 S.Ct. at 3091. Thus, the Court concluded that "the relevant test of ERISA, the structure of the entire statute, and its legislative history all support the conclusion that ... Congress did not provide, and did not intend the judiciary to imply, a cause of action for extra-contractual [sic] damages ..." under ERISA. *Id.* at 148, 105 S.Ct. at 3093. Thus, there can be no extracontractual recovery in the context of an ERISA plan, and the judgment of the trial judge should be affirmed.

A number of courts faced with claims of estoppel in the context of an ERISA plan have given several grounds for rejecting the possibility that such a claim can be brought. In *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1356–57 (9th Cir.1984), the Ninth Circuit stated that ERISA preempts state common law theories of promissory estoppel, estoppel by conduct, fraud and deceit, and contract actions. The same court stated in a later case that "[a]n employee benefit fund created under a collective bargaining agreement cannot be required on the grounds of equitable estoppel to pay benefits to a person ineligible under the Plan's provision." *Moore v. Provident Life and*

*Accident Insurance Co.*, 786 F.2d 922, 928 (9th Cir.1986). *Accord O'Grady v. Firestone Tire & Rubber Co.*, 635 F.Supp. 81, 83 (S.D.Ohio 1986).

In the instant case, even if this court were to ask the district court to consider an equitable estoppel claim by Davis, there could be no recovery. The decedent was the legal counsel in charge of interpreting the plan and counseling the Committee. As such, he was extremely knowledgeable about the contents of the plan and the way in which the Committee was disposed to administer it. It is hard to imagine a harder case in which to prove fraud or misrepresentation; if the attorney charged with advising the Committee on its administration of the plan was fooled by the working of the plan, then the plan cannot withstand any challenge.

Davis claims that KFC somehow defrauded the decedent into failing to elect to receive early retirement benefits under the plan. However, she does not attempt to argue that he did not know that he could make such an election, or that he told anyone of his reasons for not doing so. In other words, this argument is based on pure assertion, with no foundation in fact.

Finally, the Supreme Court has held that causes of action based on state common law are preempted by section 514(a) of ERISA, 29 U.S.C. § 1144(a). *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). The relevant statute states that ERISA supersedes "any and all state laws insofar as they relate to any employee benefit plan...." 29 U.S.C. § 1144(a). A saving clause preserving laws relating to insurance, banking and securities does not apply here. 29 U.S.C. § 1144(b)(2)(A). Clearly, an equitable estoppel claim would be a state law claim. As such, under this most recent Supreme Court pronouncement, such a claim would be preempted.

The same rules would apply to a request for punitive damages. Again, a number of courts have confronted this issue and have decided that neither a profit-sharing trust, *Sommers Drug Stores Co. Employee*

*Profit Sharing Trust v. Corrigan Enterprises, Inc.*, 793 F.2d 1456, 1463–64 (5th Cir.1986), nor beneficiaries under a plan, *Varhola v. Doe*, 820 F.2d 809, 817 (6th Cir.1987), could recover punitive damages. In fact, this court in *Varhola* explicitly relied on the Supreme Court's decision in *Dedeaux*, reasoning that punitive damages are based on state law and thus also are preempted by ERISA.

Because all of Davis's equitable claims are based on state law, they cannot be used to recover ERISA plan benefits or damages relating to the denial of such benefits. The district court's decisions on these matters is affirmed.

## VI

Thus, the district court's disposition of all issues on review to this court is correct. There is no basis for finding that the Committee's decision was arbitrary and capricious, and so it must be affirmed. Further, collateral estoppel does not apply here without identity of parties or issues. Finally, in that all equitable claims are based on state law, they are preempted under the relevant Supreme Court decisions. Accordingly, we hereby AFFIRM the decision of the district court.