917 F.2d 1304
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Darlene K. MAGUIRE, Plaintiff-Appellant,
v.
GENERAL MOTORS CORPORATION, Defendant-Appellee.
 No. 90-1188.
 United States Court of Appeals, Sixth Circuit.
 Nov. 7, 1990.
 
 PER CURIAM.
 
 
 1
 Before MERRITT, Chief Judge; BOYCE F. MARTIN, Jr. and ALAN E. NORRIS, Circuit Judges.
 
 
 2
 PER CURIAM.
 
 
 3
 Darlene Maguire appeals from the district court's decision granting summary judgment in favor of General Motors. We affirm.
 
 
 4
 Ms. Maguire began her employment with General Motors on August 28, 1978. On July 1, 1979, she accepted a change in job classification to a salaried position. She worked at various positions until March 15, 1986, when she asked for and was granted a leave of absence. Ms. Maguire signed a form which indicated she understood and agreed that if her leave of absence was granted it would be subject to certain terms and conditions including:
 
 
 5
 If I report for work at the expiration of this leave and a suitable opening exists, I will be considered for reemployment and every effort will be made to reinstate me in my former position or one for which, in the opinion of General Motors Corporation, I would qualify.
 
 
 6
 When Ms. Maguire's leave of absence expired, there was no position available for her; thus, she became unemployed on September 16, 1986. Ms. Maguire had participated and accrued benefits in the General Motors Savings Stock Purchase Program (the "Plan"). Upon Maguire's effective termination date, Sept. 30, 1986, the Plan owed her 227 shares of GM common stock, 11 shares of GME common stock, and 9 shares of GMH common stock. Pursuant to Plan rules, the trustee will pay benefits only in stock unless a plan participant elects to receive cash prior to or coincident with his or her effective termination date. Ms. Maguire made no such election prior to her effective termination and could only request that she be given the stock to which she was entitled.
 
 
 7
 On August 10, 1987, Ms. Maguire requested a cash settlement of the benefits she had accrued in the Plan. Contrary to Plan rules, the request was processed and the assets in her account were valued as of September 30, 1986. She was given $16,611.09.
 
 
 8
 Subsequently, General Motors informed Ms. Maguire that her settlement request had been processed in error and that she was not entitled to receive cash because she had not elected the cash option. Ms. Maguire complied with GM's request to return the cash to the trustee. GM then reinstated her account. On September 24, 1987, Ms. Maguire again requested the withdrawal of her assets. Her request was reprocessed. On October 27, 1987, Ms. Maguire received the shares to which she was entitled. Ms. Maguire first makes a state law claim that GM breached its contract with her to provide benefits. She also asserts that by taking twice the normal time to provide her funds, 10 weeks, and by not accepting her request for the amount she would have received if the funds had not been delayed, General Motors breached its fiduciary duty under federal law.
 
 
 9
 Maguire does not dispute that the General Motors Savings Stock Purchase Program is an "employee benefit plan" covered by the Employment Retirement Income Security Act of 1974. Accordingly, her state law breach of contract claim is precluded. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 52, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).
 
 
 10
 We also find that GM did not breach its fiduciary obligation to Ms. Maguire. The Supreme Court held in Firestone Tire and Rubber Co. v. Brunch, --- U.S. ----, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989): "a denial of benefits challenged under Sec. 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." The Court added, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'factor[ ] in determining whether there is an abuse of discretion.' " Id. at ----, 109 S.Ct. at 953 (citation omitted). The General Motors Saving Stock Purchase Plan includes the following provision:
 
 
 11
 Pursuant to authority delegated to it by the Named Fiduciary, the Executive Committee of the Corporation, or its delegate, has responsibility for the day-to-day operation, management and administration of the Plan, including full power and authority to construe, interpret and administer the Plan and to pass upon and decide cases presenting unusual circumstances in conformity with the objectives of the Plan and under such rules as the Executive Committee may establish. Decisions of the Executive Committee are final and binding upon the Corporation and its employees.
 
 
 12
 Because of this provision and the absence of any conflict of interest as envisioned by Firestone, we will not review the trustee's actions under a de novo standard. Instead, we will overturn the trustee's decision only if Ms. Maguire can prove that General Motors acted in an arbitrary and capricious manner when it paid her in stock rather than in cash. Firestone, --- U.S. at ----, 109 S.Ct. at 956; Davis v. Kentucky Finance Cos. Retirement Plan, 887 F.2d 689 (6th Cir.1989).
 
 
 13
 No one disputes that GM erred when it allowed Ms. Maguire to request a cash settlement of her account and when it disbursed cash to her contrary to Plan rules. However, we do not find that the trustee acted arbitrarily and capriciously. Upon discovering that he had disbursed funds contrary to Plan rules, the trustee sought to correct his error and "discharge his duties with respect to [the] [P]lan ... in accordance with the documents and instruments governing the [P]lan." 29 U.S.C. Sec. 1104(a)(1)(D)(1988).
 
 
 14
 Unlike the conflict of interest in Firestone, where the company administering the termination plan would have realized great financial gain through its interpretation of plan documents, GM's actions regarding Ms. Maguire's account would not have worked to its financial advantage. At the approximate time GM requested that Ms. Maguire return the $16,611.09 in cash, the stock to which Ms. Maguire was entitled was worth over $20,000. Defendant's Brief at 17 n. 5. Because GM could not have predicted the October 1987 stock market "crash" which caused the value of Ms. Maguire's stock to fall precipitously, we find that GM acted against its financial interest when, pursuant to Plan rules, it sought to correct its error and pay Ms. Maguire in stock instead of in cash.
 
 
 15
 Accordingly, we affirm the district court's opinion.