NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0168n.06
Filed: March 3, 2005

Case No. 02-2354

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JAMES RECKER, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| NEWCOURT CREDIT GROUP, INC.; | ) | DISTRICT OF MICHIGAN |
| NEWCOURT FINANCIAL, USA, INC.; and | ) | |
| CIT GROUP, INC., | ) | |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |
| _____ | ) | |

BEFORE: BATCHELDER and GIBBONS, Circuit Judges; BEER[*], District Judge.

ALICE M. BATCHELDER, Circuit Judge. Defendant-Appellants Newcourt Credit Group, Inc., Newcourt Financial USA, Inc., and CIT Group, Inc. (collectively "Newcourt"),[1] appeal from the district court's judgment that Newcourt arbitrarily and capriciously denied Plaintiff-Appellee James Recker ("Recker") of benefits under the 1996 AT&T Capital Corporation Leadership Severance Plan ("Plan") in violation of the Employee Retirement Income Security Act ("ERISA")§ 502, 29 U.S.C. § 1132(a)(1)(B). Newcourt also appeals the district court's denial of its motion for summary judgment with respect to Recker's interference claim under ERISA § 510, 29 U.S.C. § 1140.

---

[*]The Honorable Peter Beer, United States District Judge for the Eastern District of Louisiana, sitting by designation.

[1]Newcourt Credit, of which Newcourt Financial is a subsidiary, was acquired by CIT Group in 1999.

Recker was employed as Chief Counsel of AT&T Capital Systems Leasing ("Systems Leasing"), a wholly owned subsidiary of AT&T Capital Corporation ("AT&T Capital"). Recker's duties as Chief Counsel included oversight of the legal functions of Systems Leasing, as well as supervising the legal department and its employees. He also managed the business functions for Systems Leasing Value Added Services ("VAS"), a business within the Systems Leasing Division. As a management employee, Recker qualified for severance benefits under the Plan.

The Plan provided that certain management personnel were entitled to severance payments if those employees experienced a qualifying termination of employment as defined by the Plan. The Plan defines qualifying termination to mean, in relevant part, any termination by the Plan participant (i.e. resignation) due to an elimination or reduction of the participant's eligibility to participate in the company's benefit plans or programs that is inconsistent with the eligibility of similarly situated employees to participate, or a significant reduction in the participant's duties as they existed immediately after the requisite closing date. In 1996, a merger occurred between AT&T Corporation, AT&T Capital, Hercules Limited, and Antigua Acquisition Corporation. The closing date for that transaction was determined to be October 1, 1996.

On January 12, 1998, AT&T Capital was acquired by Newcourt. Under the terms of the acquisition, Newcourt assumed responsibility for administering the Plan and an earlier benefit plan called the 1995 AT&T Member Annual Incentive Plan ("1995 Incentive Plan").[2] In February 1998, Newcourt established a Green Circle list of management employees as an incentive to dissuade them from leaving. While most employees on the list were granted common shares in Newcourt or

---

[2]The term qualifying termination in the Plan refers to specified events occurring within two years of the merger closing date of October 1, 1996, while the 1995 Incentive Plan defines qualifying termination as particular events occurring within two years of the change in control between Newcourt and AT&T Capital in January 1998.

2

allowed to purchase shares at a reduced rate, Recker was not permitted to participate in the program despite the fact that his name was placed on the list. At some point, Newcourt also informed Recker that he would not be able to continue in both his position as Chief Counsel of Systems Leasing and head of the business management functions at VAS. When Recker inquired into how his job duties and compensation might change depending on which position he chose to retain, Newcourt did not respond to his requests.

In August 1998, at a meeting for senior members of the legal department, Newcourt apparently unveiled a plan to centralize responsibility for all the legal budgeting functions, and the major litigation and bankruptcy matters of its individual business segments to its New Jersey office. Apparently believing that his job duties had already been significantly reduced, on September 30, 1998, just one day before the two-year period under the Plan expired, Recker informed Newcourt that it had caused him a qualifying termination under the Plan. He provided Newcourt with notice of his resignation and filed a claim for benefits under both the Plan and the 1995 Incentive Plan. Although it is not disputed that Recker remained both Chief Counsel of Systems Leasing and head of the business functions of VAS at the time he resigned, he claimed to be entitled to benefits as his duties as Chief Counsel and head of VAS had been substantially reduced, and because he was not given the opportunity to participate in the Green Circle program.

Under the terms of the Plan, Newcourt itself is the plan administrator with the "responsibility and discretionary authority to interpret the terms of the Plan, determine eligibility for benefits and to determine the amounts of such benefits." On April 1, 1999, the plan administrator granted Recker $56,106.00 under the 1995 Incentive Plan, finding that he had experienced a qualified termination under that plan's provisions because he had experienced a significant reduction in his VAS duties.

3

On April 6, 1999, the plan administrator rejected Recker's claim under the Plan, stating that a qualifying termination had not occurred under its provisions because Recker's duties had not been significantly reduced, and Newcourt did not reduce or eliminate his eligibility to participate in any benefit plans. Recker appealed the denial of his claim under the Plan to Newcourt's Benefits Committee, but his appeal was denied on September 23, 1999. The Benefits Committee determined "that although some of the Chief Counsel's functions were centralized as a result of the acquisition, this change did not constitute a significant reduction in [Recker's] duties and responsibilities as [his] core job duties and reporting remained essentially the same." Additionally, the Benefits Committee stated that company records confirmed that Recker did not become head of VAS until January 23, 1997, precluding his claim for benefits under the Plan, and that the Green Circle program was a stock option program and not a benefit plan.

Recker filed a complaint against Newcourt in the district court alleging in pertinent part that Newcourt acted arbitrarily and capriciously in denying him benefits under the Plan in violation of ERISA § 502, and also that Newcourt interfered with his right to obtain benefits under the Plan in violation of ERISA § 510.[3] The parties filed cross-motions for summary judgment as to these claims. After converting the parties' motions for summary judgment into motions for entry of judgment on the merits with respect to the denial of benefits claim, *see generally Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609 (6th Cir. 1998), the district court granted in part, and denied in part, each parties' motion for judgment. The court upheld Newcourt's claims that Recker was not responsible for the management functions of VAS on October 1, 1996, thereby preventing him from

___

[3]Recker also alleged claims for breach of the AT&T Capital Plan, violation of ERISA § 503, 29 U.S.C. § 1133, and violation of ERISA § 404, 29 U.S.C. § 1104. The parties stipulated to the dismiss the claim for breach of the AT&T Capital Plan, and Newcourt filed a motion to dismiss the claims for violation of ERISA § 503 and § 404, which the district court granted. Recker does not appeal that decision.

4

arguing that the loss of such responsibility violated the Plan, and that the Green Circle program was not a benefit severance plan to which Recker was entitled to under the Plan. Recker did not cross-appeal these decisions. The court agreed with Recker, however, that Newcourt's determination that he had not experienced a significant reduction in his responsibilities as Chief Counsel was arbitrary and capricious in violation of ERISA § 502. The district court denied both parties' motions for summary judgment as to the ERISA § 510 claim.

## I.

We review a district court's decision in an ERISA case *de novo*, unless the policy gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). In the latter instance, a court reviewing a plan administrator's decision should apply the arbitrary and capricious standard of review. *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 168 (6th Cir. 2003). It is undisputed that Newcourt's plan confers upon the plan administrator discretionary authority to determine eligibility for benefits and to construe the terms of the plan. Although Newcourt is operating under a conflict of interest as both administrator and issuer of the Plan, *see Killian v. Healthsource Provident Administrators, Inc.*, 152 F.3d 514, 521 (6th Cir. 1998), the existence of a conflict does not alter the standard, but should merely be considered as a factor in determining whether the plan administrator's decision was arbitrary and capricious. *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 694 (6th Cir. 1989).

The arbitrary and capricious standard is the least demanding form of judicial review of administrative action. *Williams v. International Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000). In making its determination, the court must decide whether the plan administrator's action was

"rational in light of the plan's provisions." *Id.* (quoting, *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988)). If it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious. *McDonald*, 347 F.3d at 169. Finally, in making its determination, the court is confined to reviewing only those materials known to the administrator at the time the decision was made. *Peruzzi v. Summa Medical Plan*, 137 F.3d 431, 433-34 (6th Cir. 1998).

In support of his claim that Newcourt significantly reduced his duties and responsibilities as Chief Counsel, Recker claims that Newcourt was planning to and had already begun centralizing supervision of all of Systems Leasing's major litigation and bankruptcy matters to its New Jersey office, and that the budgeting functions for his legal department had also been transferred there. Newcourt argues that it is undisputed that when Recker resigned he was still overseeing Systems Leasing's legal functions as Chief Counsel, performing essentially the same tasks as always. The district court primarily reviewed Recker's deposition testimony and found it to be "ambivalent" in that Recker appeared to be uncertain about the centralization of his various duties and whether those duties had actually been transferred or were only in the process of being transferred at the time he resigned on September 30, 1998. The district court went on, however, to find that "by claiming that the 'transition' had begun by the time he resigned, Plaintiff insinuates that a substantial amount of his responsibilities in the areas of litigation, bankruptcy and budgeting had, in fact, already been transferred to New Jersey, and Plaintiff likely suffered a significant reduction in his job duties."

We have been clear that in analyzing the decision of a plan administrator in an ERISA denial of benefits case, a court may only consider evidentiary materials presented to the Plan administrator, "and not any depositions, affidavits, or similar litigation-related materials submitted to the district

6

court by parties." *University Hospitals of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 845 n. 2 (6th Cir 2000). The ultimate question in this case is whether Recker suffered a significant reduction in his job duties as required by the Plan for a qualifying termination prior to October 1, 1998. Newcourt's decision that he did not can only be deemed arbitrary and capricious if irrational in light of the materials reviewed by the plan administrator. Those materials included the letter submitted by Recker in support of his claim for benefits on September 30, 1998, including its corresponding exhibits, and any other materials considered by Newcourt during its evaluation.

In reviewing the administrative record, it appears that the first time the idea of centralizing litigation and bankruptcy management authority was discussed in any detail was at an August 1998 meeting in New Jersey for senior members of the company's legal department. In his letter to the plan administrator, Recker stated that following that meeting, "I was disappointed at this diminished prospective role for my potential position in the Legal Department." After speaking of these negative changes in a prospective sense, Recker resigned approximately one month later citing the transfer of all legal budgeting functions and material litigation and bankruptcy matters away from the Chief Counsel position as evidence that he suffered a significant reduction in his duties as Chief Counsel. But he cites no specific evidence to show which, if any, of his duties were actually centralized before he resigned. There is also evidence that the plan administrator consulted with Recker's superiors about his status before reaching its decision that his job duties as Chief Counsel had not been significantly reduced.

The problem with the vague and contradictory statements presented by Recker to the plan administrator is that it is clear under the Plan that Newcourt could have waited until the relevant two-year period ended and then transferred all of Recker's duties to New Jersey, and he would not

7

have been eligible for the benefits he claims.  Even if the evidence shows that Newcourt was planning to or had begun to reduce Recker's duties, there is no indication how far into the transition process Newcourt was on October 1, 1998.  Under these circumstances, it cannot be said that the plan administrator's decision was arbitrary and capricious, and the district court erred in concluding otherwise.

Despite his failure to cross-appeal, Recker urges us to consider the other grounds advanced in support of his benefits claim that were rejected by the district court.  Newcourt argues that an appellee may not attack a district court's final judgment "with a view to enlarging his own rights thereunder or lessening the rights of his adversary" without filing a cross-appeal.  *United States v. American Railway Express Co.*, 265 U.S. 425, 435 (1924).  But it is also well-established that the prevailing party below need not cross-appeal to be entitled to support the judgment in its favor on grounds expressly rejected by the district court.  *See Id.* at 435-36; *see also Jacobs v. E.I. du Pont de Nemours & Co.*, 67 F.3d 1219, 1246 n. 43 (6th Cir. 1995) ("appellee can propose alternative grounds in support of trial court judgment so long as those arguments were presented below"); *Jasany v. U.S. Postal Service*, 755 F.2d 1244, 1248 n. 1 (6th Cir. 1985) (appellee "does not have to cross-appeal to argue that there are alternative grounds that support the judgment below").[4]  As alternative grounds to support the district court's decision that he suffered a qualifying termination under the Plan in violation of ERISA § 502, Recker stated in his letter to the plan administrator that his job duties as head of VAS were significantly reduced, and also that he was denied participation in the Green Circle program.

---

[4]Newcourt's reliance on our decision in *Ford Motor Credit Co. v. Aetna Casualty & Sur. Co.*, 717 F.2d 959 (6th Cir. 1983), is misplaced because it is unclear from that case whether the appellee even raised the claim not cross-appealed at the district court level.

The essence of the first claim centers around when Recker assumed duties with VAS. Newcourt's Benefits Committee relied on company business records to show that Recker did not assume responsibility as head of VAS until January 23, 1997. Recker argues that the company records are misleading and claims to have already been managing the business functions of VAS at the closing date in October 1996, but he presented no concrete evidence to the plan administrator to prove when he actually assumed those duties.[5] Recker also notes that he was awarded benefits under the 1995 Incentive Plan specifically because he was asked to relinquish his role as the business manager of VAS after Newcourt acquired AT&T Capital, and that such an award is inconsistent with Newcourt's failure to recognize his identical claim under the Plan. As the district court recognized, however, the term qualifying termination is defined differently under the two plans. In order to receive benefits under the Plan, Recker must have had his VAS duties on October 1, 1996, and then had those duties significantly reduced by October 1, 1998. To receive benefits under the 1995 Incentive Plan, Recker need only prove that he had VAS duties during the change in control in January 1998, which were significantly reduced thereafter. Not only is it possible to reach different results under the respective plans, but Newcourt's seemingly contradictory award of benefits is actually consistent with its determination that Recker only attained VAS responsibilities in January 1997. The district court was, therefore, correct in concluding that Newcourt did not act arbitrarily and capriciously in finding that Recker did not suffer a qualifying termination with respect to his VAS duties.

We are also in agreement with the decision of the plan administrator and the district court

---

[5]While Recker later submitted the affidavits of three former supervisors or coworkers to the district court to support the claim that he had assumed VAS duties prior to the closing date, this information was not before plan administrator, and the district court properly refused to consider this evidence.

as to the Green Circle program. Although the Plan does define a qualifying termination as "an elimination or reduction of the participant's eligibility to participate in the company's benefit plans or programs that is inconsistent with the eligibility of similarly situated employees" to participate, the Green Circle program is not a benefit plan as envisioned by the Plan, but merely a stock option incentive program to which Recker was not necessarily entitled to participate.

## II.

Newcourt also contests the district court's denial of its motion for summary judgment as to Recker's interference claim under ERISA § 510. Generally, a district court's denial of a motion for summary judgment is not appealable. *Klein v. Long*, 275 F.3d 544, 549 (6th Cir. 2001). "However, when the appeal from a denial of summary judgment is presented together with an appeal from a grant of summary judgment, we have jurisdiction to review the appropriateness of the district court's denial." *Thomas v. United States*, 166 F.3d 825, 828 (6th Cir. 1999). Nevertheless, we need not address this claim. Both Newcourt and Recker explicitly recognize in their briefs to this Court that following the district court's denial of their cross-motions for summary judgment, the parties stipulated to dismiss the ERISA § 510 claim. On May 17, 2002, the district court entered an order dismissing Recker's ERISA § 510 claim without prejudice. The dismissal of a claim without prejudice does not act as an adjudication upon the merits. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990). Moreover, voluntary dismissal of a claim without prejudice leaves the situation as if the action had never been filed, and since the action is no longer pending no further proceedings on this issue are proper. *See Bowman v. Shawnee State University*, 220 F.3d 456, 465 n. 7 (6th Cir. 2000). We decline to exercise jurisdiction over a claim that is not properly before us.

10

**III.**

For the forgoing reasons, we **REVERSE** in part, and **AFFIRM** in part, the district court's judgment as to the ERISA § 502 denial of benefits claim. We decline to address the ERISA § 510 interference claim.

**JULIA SMITH GIBBONS, Circuit Judge, dissenting.** While I agree with the majority's determinations with regard to Recker's job duties as head of VAS, the Green Circle program, and Recker's interference claim under ERISA § 510, I disagree with that part of the majority's opinion reversing the district court's decision finding that the plan administrator arbitrarily and capriciously denied Recker benefits in violation of ERISA § 502. I therefore respectfully dissent.

The district court found that the plan administrator's determination was arbitrary and capricious. The court's rationale was basically twofold. It first noted that the plan administrator never defined what it considered Recker's job duties to be. The court then reasoned that, if the fact that Recker continued to work in a legal capacity sufficed to demonstrate that his job responsibilities were not significantly reduced prior to the closing date, such an interpretation of "significant reduction" is arbitrary and capricious in light of the plan's provisions and in light of the fact that Recker initially had significant responsibilities as chief counsel. Second, the court determined that – even if Newcourt's conclusion that centralization did not significantly reduce Recker's duties is ultimately accurate – the absence of evidence in the record to support this conclusion, and the absence of any indication as to what the proper benchmark for judging whether Recker's duties were significantly reduced was or should have been, makes that assertion a conclusory statement with no evidentiary support.

The district court's reasoning was sound. On appeal, Newcourt asserts that the district court's finding was erroneous for numerous reasons. All of Newcourt's arguments are unavailing. First, Newcourt argues that Recker's duties included overseeing Newcourt's legal functions, managing the legal department, and performing transactional tasks. However, there is no indication in the record that the plan administrator or Benefits Committee considered these to be Recker's

12

duties or main responsibilities. Citing *Gallo v. Amoco Corp.*, 102 F.3d 918 (7th Cir. 1996), Newcourt argues that – although it may be unclear from the record what the plan administrator considered Recker's duties to be – it was permitted to provide a description of these duties during litigation. *Gallo* stands for nothing of the sort. The case provides only that, when a plan administrator interprets a plan provision in the process of making a decision regarding benefits, it can defend this interpretation at trial with any arguments that may support the interpretation's reasonableness. *Id*. at 923. *Gallo* explicitly disavows the notion that plan administrators may introduce new factual evidence into the record during litigation. *Id*. (stating that the plan administrator "cannot augment the administrative record with new facts bearing upon the application for benefits"). The extent of Recker's duties immediately after the closing date is a question of fact, not a question of plan interpretation. Hence, Newcourt cannot submit new evidence on that issue at this point. Even if the extent of Recker's duties is a question of plan interpretation, Newcourt is really asking that a post-determination interpretation be accepted, not that rationales in support of an interpretation utilized in conjunction with a benefits determination be accepted. *Gallo* does not support acceptance of a post-determination interpretation.

Second, Newcourt asserts that any centralization of legal work in New Jersey occurred only after October 1, 1998, and that Recker consequently did not experience any actual reduction in duties prior to that date. Even if this characterization is true, there is no clear indication of the timing of the centralization in the record, and it does not alter the fact that the plan administrator's decision that Recker did not experience a significant reduction (before October 1, 1998) finds no support in the record. Third, Newcourt asserts that the plan administrator consulted with people who were familiar with Recker's duties and based its determination on information they provided. While

this representation appears to be true, there is no indication in the record as to how these individuals characterized Recker's duties or of any rationale for why any reduction in those duties was not significant, other than the conclusory statements that Recker continued performing core duties and legal work. Finally, Newcourt argues that the district court improperly imposed on the plan administrator the burden of explaining the reasoning behind the decision to deny Recker benefits at the time it denied those benefits. This argument mischaracterizes the district court's ruling. Rather, the district court merely determined that there was insufficient evidence to support a conclusion that the plan administrator reasonably denied Recker benefits.[6]

It is true, as the majority points out, that "the arbitrary and capricious standard is the least demanding form of judicial review of administrative action." As the majority also points out, however, a court reviewing a plan administrator's decision is "confined to reviewing only those materials known to the administrator at the time the decision was made." The simple fact is that the materials known to the administrator, comprising Recker's submissions as well as any information gleaned from interviews of Newcourt officials, do not support the administrator's conclusion. In sum, there is no indication from the record that the plan administrator engaged in a "deliberate principled reasoning process" or that substantial evidence supports the decision to deny Recker benefits; therefore, the district court did not err in finding that the plan administrator's decision was arbitrary and capricious. *See Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 520 (6th Cir. 1998) (citation omitted). The conflict of interest that existed because Newcourt administered

---

[6]Newcourt also argues that the district court should have remanded Recker's claim to the plan administrator to build the evidentiary record rather than enter judgment for him. On the contrary, when a court finds that a plan administrator denied benefits in an arbitrary and capricious manner, the proper procedure is to award judgment for the claimant. *See Williams v. Int'l Paper Co.*, 227 F.3d 706, 715 (6th Cir. 2000).

14

and funded the Plan further supports the determination that the denial of benefits was arbitrary and capricious. *See id.* at 521 (characterizing any situation in which the same party both administers and funds a plan as presenting an actual conflict of interest that must be considered as a factor when determining whether the administrator abused its discretion by denying benefits in an arbitrary and capricious manner). For these reasons, I would wholly affirm the district court's judgment as to Recker's ERISA § 502 claim.