Ouida Sue PARKER, Plaintiff,

v.

METROPOLITAN LIFE, INSURANCE COMPANY, Defendant.

Ouida Sue PARKER, Plaintiff,

v.

SCHERING–PLOUGH CORPORATION, and Schering–Plough Health Care Products, Inc., Defendant.

Nos. 94–2155 M1/A, 94–2506 M1/BRO.

United States District Court, W.D. Tennessee, Western Division.

Jan. 17, 1995.

13. The groundwater quality investigation referred to in the appraisal was actually done in December 1985.

Kaye G. Burson, Rutledge & Rutledge, Memphis, TN, for plaintiff.

John J. Heflin III, Rickey Bourland Heflin & Alvarez, Memphis, TN, for defendants.

**ORDER GRANTING DEFENDANT METROPOLITAN LIFE'S MOTION TO DISMISS ALL CLAIMS ARISING UNDER THE ADA AND GRANTING DEFENDANT METROPOLITAN LIFE'S MOTION FOR SUMMARY JUDGMENT AND GRANTING SCHERING–PLOUGH DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

McCALLA, District Judge.

This matter is before the Court on defendant Metropolitan Life's Motion to Dismiss

All Claims Arising Under the Americans with Disabilities Act, filed September 2, 1994, Metropolitan Life's Motion for Summary Judgment filed November 21, 1994, and defendants Schering–Plough Corporation and Schering–Plough Health. Care Products, Inc.'s Motion to. Dismiss filed August 9, 1994.[1]

For the reasons stated, this Court hereby GRANTS defendant MetLife's Motion to Dismiss All Claims Arising Under the ADA, GRANTS defendant MetLife's Motion for Summary Judgment, regarding plaintiff's ERISA claims, and GRANTS defendants Schering–Plough Corporation and Schering–Plough Health Care Products Inc.'s Motion for Summary Judgment.

This is an action for long-term disability benefits pursuant to an employee benefits plan. 29 U.S.C. § 1001 *et seq.*, (Employee Retirement Income Security Act of 1974, as amended). Plaintiff also asserts claims under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, and as to the defendants Schering–Plough Corporation and Schering–Plough Health Care Products ("Schering–Plough defendants"), plaintiff asserts state law claims of negligence and intentional infliction of emotional distress.[2]

In plaintiff's remaining claims against Metropolitan Life ("MetLife") and the Schering–Plough defendants, she alleges unlawful discrimination under the ADA, because they administered and offered an employee long-term disability plan that distinguishes between benefits for mental and physical disabilities. Plaintiff asserts that under the ADA MetLife is a "covered entity," that she is a "qualified individual with a disability," and therefore, that she is entitled to relief under the Act.

Plaintiff also asserts that MetLife and the Schering–Plough defendants violated ERISA

---

1. For purposes of this Order, this Court will treat Schering–Plough defendants' Motion to Dismiss as a Motion for Summary Judgment.

2. In an Order entered October 18, 1994, plaintiff voluntarily dismissed all state law and common law claims against defendant Metropolitan Life. Initially, as to Schering–Plough defendants, plaintiff also asserted claims under Title VII of

the Civil Rights Act of 1991 and 1964, as amended, 42 U.S.C. § 2000a *et seq.*; and the Tennessee Human Rights Act, T.C.A. § 4–21–101 *et seq.* However, in an Order entered October 21, 1994, this Court granted plaintiff's motion, pursuant to Rule 41(a)(2), to dismiss her claims under Title VII and the Tennessee Human Rights Act.

by wrongfully denying her disability benefits under the Schering–Plough long-term disability plan. Plaintiff claims that defendants MetLife and Schering–Plough have misconstrued the plan language regarding mental illness and that, in fact, plaintiff's illness has a physical and/or chemical origin which removes her condition from the mental or nervous disorders provision of the plan.

Plaintiff further asserts that the defendants, as fiduciaries under ERISA, retained discretionary control of claims and breached their fiduciary duty by denying benefits to her under the plan.

The material facts in this case are not in dispute. Plaintiff is approximately fifty-four (54) years old, is a widow, and is no longer working. Plaintiff was an employee of Schering–Plough Corporation and began her employment on April 20, 1981. Defendants concede that the plaintiff became disabled on October 29, 1990, and it is not disputed that her disability continues to this date. During plaintiff's employment, she participated in a long-term disability plan provided by Schering–Plough Corporation. The Schering–Plough long-term disability plan was administered at least in part by MetLife.[3] Plaintiff received long-term disability benefits continuously from April 29, 1991, through April 28, 1993, at which time her benefits were discontinued.

It is undisputed that plaintiff received two years of medical benefits for her mental disability in accordance with the terms of her long-term disability plan. The plan provides in pertinent part:

MENTAL OR NERVOUS DISORDERS. If you are totally disabled due to a mental or nervous disorder, your LTD [long-term disability] benefit is payable for up to twenty-four (24) months. At the end of twenty-four (24) months of LTD benefit payments, benefits will continue only if you are confined in a hospital or other institution qualified to provide care and treatment for your mental or nervous disorder.

Further, if you are confined for at least fourteen (14) consecutive days, your LTD benefit is extended to provide benefits for an additional ninety (90) days after the confinement. If during the additional ninety (90) day period you are again confined in a hospital or institution for fourteen (14) days or more, your LTD benefit will be paid during the confinement and the ninety (90) day period following your release.

Summary Plan Description Claims record at 34.

The plan provides for continual disability payments up to age sixty-five (65) for individuals with disabilities other than mental/nervous disabilities, i.e., physical disabilities. *Id.* at 33. There is no dispute that plaintiff's primary diagnosis is major depression. In correspondence dated May 17, 1993, plaintiff's physician, Dr. M.W. Lathram, Jr., specifically stated the following:

The above-named party, Sue Parker, has just had an office visit. I will reiterate that the records indicate that she has been a patient since 1975 with many hospitalizations for the same diagnosis, major depression. She has had thorough examinations on many occasions, including a most thorough examination by Dr. Paul Neal, clinical psychologist.

Sue continues to show signs of major depression with a great deal of anger, pity, and some suicidal ideation, decreased psychomotor activity, obsessional concern to the point of rumination, which has hindered life efficiency. I have used different approaches, including electroshock therapy in 1991. She had a trial with Lithium for over a year. I have prescribed amitriptyline (Elavil), lorazepam 0.5 QID (Ativan). I am adding the chemical, Tegretol (carbamazine), 400 mg daily to help arrest the process.

In my opinion the lady has a chronic major depression and all evidence indicates that this is a chemical disorder of a deepseated

---

**3.** While MetLife alleges in its Motion for Summary Judgment that it administered the Schering–Plough long-term disability plan, the Schering–Plough defendants have not come forth with any evidence to counter plaintiff's allegations that they too are liable under ERISA as plan administrators. *See* part IV of this Order, granting Schering–Plough Defendants' Motion to Dismiss with respect to plaintiff's ERISA claims.

nature. I hope this letter will aid you in making a decision in considering her for extended disability benefits.

Claims record at 118.

For purposes of this Order addressing consolidated cases 94–2155 and 94–5026, we will first consider plaintiff's ADA claims.

## I.

*Plaintiff's Claims Under Title I of the ADA*

■ Under Title I of the ADA, plaintiff alleges unlawful discrimination by the Schering–Plough defendants because they maintain on behalf of their employees a long-term disability plan that distinguishes between benefits for mental and physical disabilities. Plaintiff's ADA Title I action against MetLife arises out of MetLife's discontinuation of long-term disability benefit payments to plaintiff under the terms of the Schering–Plough plan in which plaintiff participated. Again, Plaintiff asserts that since the plan provides less benefits for persons with mental disabilities than for persons with physical disabilities, the ADA is violated. The Schering–Plough defendants assert that plaintiff's claims under the ADA should be dismissed because plaintiff is not a "qualified individual with a disability" as defined by the Act and therefore, that plaintiff is not entitled to the Act's protection.[4]

Title I of the ADA addresses disability discrimination by employers. Section 102(a) of Title I of the ADA states that "no covered entity shall discriminate against a *qualified*

*individual with a disability . . . .*" 42 U.S.C. § 12112(a). (Emphasis added).

A qualified individual with a disability is defined, in pertinent part, as:

an individual *with a disability* who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. (emphasis added).

42 U.S.C. § 12111(8).

In *Beauford v. Father Flanagan's Boys' Home*, 831 F.2d 768 (8th Cir.1987), *cert. denied*, 485 U.S. 938, 108 S.Ct. 1116, 99 L.Ed.2d 277 (1988), the Eighth Circuit considered whether an employee on disability leave who was no longer able to perform the essential functions of her job and who claimed disability discrimination in the provision of health and disability benefits was entitled to the protection of the Rehabilitation Act of 1973. Because provisions under the ADA are to be interpreted consistent with similar requirements under the Rehabilitation Act, the *Beauford* court's analysis is instructive in the present case. *See* 42 U.S.C. § 12117(b); *Tyndall v. Nat. Educ. Centers*, 31 F.3d 209 (4th Cir.1994).

In considering the employee's claim, the court first noted that the clear language of the Rehabilitation Act extended the Act's protection only to "otherwise qualified handicapped individual[s]." The court next considered the Supreme Court's interpretation of an "otherwise qualified individual" under the Rehabilitation Act as "one who is able to meet all of a program's requirements in spite of his handicap." *Id.* at 771 (citing *South-*

---

4. MetLife also asserts that plaintiff's claims under Title I of the ADA must be dismissed because MetLife is not a "covered entity" as defined by the Act and therefore, that MetLife is not a proper defendant under the ADA. Title I of the ADA, 42 U.S.C. § 12111, *et seq.* provides in pertinent part that "no *covered entity* shall discriminate against a qualified individual with a disability . . ." 42 U.S.C. § 12112. (Emphasis added). "Covered entity" is defined as an "employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2). MetLife asserts that plaintiff's claim under Title I should be dismissed because MetLife is not plaintiff's employer and is therefore not a covered entity as provided for by the Act. *But see* 42 U.S.C. § 12111(5)(A); *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir.1993) (citing *Conley v.*

*Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)); *Peters v. Wayne State Univ.*, 691 F.2d 235, 237 (6th Cir.1982), *cert. granted*, judgment vacated and case remanded on different grounds, 463 U.S. 1223, 103 S.Ct. 3566, 77 L.Ed.2d 1406 (1983) (citing *NLRB v. Local No. 64*, 497 F.2d 1335, 1366 (6th Cir.1974); *Carparts Dist. Ctr., Inc. v. Automotive Wholesalers Assoc. of New England, Inc.*, 37 F.3d 12, 17 (1st Cir.1994) (citing *Spirt v. Teachers Ins. & Annuity Ass'n*, 691 F.2d 1054 (2d Cir.1982), *vacated* and *remanded sub nom, Long Island Univ. v. Spirt*, 463 U.S. 1223, 103 S.Ct. 3566, 77 L.Ed.2d 1406 (1983), reinstated on remand subject to modification on other grounds, 735 F.2d 23 (2d. Cir. 1983), *cert. denied*, 469 U.S. 881, 105 S.Ct. 247, 83 L.Ed.2d 185 (1984)).

*eastern Community College v. Davis*, 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979)). Finally, the Eighth Circuit found that both the statute's language and its interpretation by the Supreme Court indicated that section 504 of the Rehabilitation Act was designed to prohibit discrimination within an employment relationship in which the employee is able to do the job in question. Therefore, the court denied the employee's claim because by her own admission she was no longer able to perform her job. *Id.*

While the Eighth Circuit determined whether the plaintiff in *Beauford* was "qualified" at the time she claimed benefits under the plan rather than at the time she was offered admission into the plan, the result is the same as in the present case. The totally disabled plaintiff in *Beauford* did not have standing to sue under the Rehabilitation Act, just as the plaintiff in the instant case does not have standing to sue under the ADA.

In denying the employee's claim for disability benefits, the Eighth Circuit noted that although it may seem undesirable to discriminate against a handicapped employee who is no longer able to do his or her job, this sort of discrimination is not within the protection of section 504 of the Rehabilitation Act. *Id.*

As with plaintiff in the present case, it may seem undesirable and perhaps unpalatable that a totally disabled individual is not entitled to relief under Title I of the ADA. However, the plain language of the Act clearly indicates that the ADA was designed to afford relief only to those individuals with disabilities who can perform the essential functions of the job that they hold or seek. *See* ADA § 102(a); 42 U.S.C. § 12112(a); 42 U.S.C. § 12111(8). *See also Garcia–Paz v. Swift Textiles, Inc.*, 873 F.Supp. 547, 555 (D.Kan.1995).

Furthermore, courts interpreting the ADA, have found that only persons with disabilities who are "qualified" for the position they hold or desire may state a claim for discrimination under the Act. *See Tyndall v. Nat. Educ. Centers*, 31 F.3d 209 (4th Cir. 1994) (establishing employment discrimination under the ADA requires: first, that plaintiff have a "disability;" second, that plaintiff be "qualified" for the job; and third, the job action in question must constitute unlawful "discrimination" based on the disability); *See also Ethridge v. State of Alabama*, 860 F.Supp. 808 (M.D.Ala.1994).

A review of the legislative history of Title I also supports the conclusion that this portion of the statute seeks to prohibit discrimination only against qualified individuals with disabilities.[5] Thus, although plaintiff may have been "qualified" to perform the essential functions of her job at the time of her enrollment in the plan, she has not shown that she was a "qualified individual *with a disability*" at that time.[6] Thus, plaintiff is not a "qualified individual with a disability" as defined by the Title I of the Act, and plaintiff does not have standing to sue under Title I of the ADA. Therefore, defendants' Motions to Dismiss Plaintiff's Claims Under Title I of the ADA are hereby GRANTED.

---

**5.** The legislative history of the ADA states that the term "qualified" refers to whether the individual is qualified at the time of the job action in question. S.Rep. No. 116, 101st Cong., 1st Sess. 26 (1989). Assuming that plaintiff's enrollment in the plan is the "job action in question" and that plaintiff was qualified to perform her job, plaintiff does not allege that she was a "qualified individual *with a disability*" at the time of her enrollment in the plan. *See also* S.Rep. No. 116, 101st Cong., 1st Sess. 26 (1989); H.R.Rep. No. 485, part 2, 101st Cong., 2d Sess. 55 (1990) (explaining that the basic concept behind the term "qualified individual with a disability" as used in Title I is so that an employer may require every employee to be qualified to perform the essential functions of a job); H.LR.Rep. No. 485, part 3, 101st Cong., 2d Sess. U.S.Code Cong. & Admin.News 1990, pp. 267, 337, 453 (1990) (stating that the underlying premise of Title I is that persons with disabilities should not be excluded from job opportunities *unless* they are actually unable to do the job).

**6.** Plaintiff cites *Schroeder v. Connecticut Gen. Life Ins. Col, et al.*, Civil Action No. 93–M–2433 (1994) as support for her position that she is a "qualified individual with a disability." Plaintiff's Response to Schering–Plough's Motion to Dismiss at 8. However, the court in *Schroeder* was not presented with, nor did it address, who is a "qualified individual with a disability" within the meaning of Title I of the ADA. Thus, *Schroeder* does not support plaintiff's contention that she is a "qualified individual with a disability" as defined by the Act.

## II.

*Plaintiff's Claims Under Title III of the ADA*

Plaintiff also asserts [7] that defendants are liable under Title III of the ADA. Title III is concerned with handicap-based discrimination that prevents equal access to places of "public accommodation." 42 U.S.C. § 12181, *et seq.* Title III provides that:

> [n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

### A. Plaintiff's ADA Title III Claim Against MetLife

■ The Act defines public accommodation to include a "laundromat, dry-cleaner, bank, ... insurance office, professional office of a health care provider, hospital, or other service establishment," 42 U.S.C. § 12181(7)(F). Defendant MetLife concedes that it maintains offices that would fall under this definition. However, MetLife asserts that it is not a proper defendant under this provision of the Act because plaintiff was not denied access to or equal enjoyment of any of its facilities by reason of her disability.

In *Pappas v. Bethesda Hosp. Assoc.*, 861 F.Supp. 616 (S.D.Ohio 1994), the court considered whether an administrator of an employee benefit plan that allegedly discriminated in the provision of health insurance benefits was liable under Title III of the ADA. Interpreting Title III according to the ordinary, common meaning of the words in the statute, the court found that the references throughout Title III make it clear that "its scope is limited to discrimination in the provisions of goods, services, facilities, privileges, advantages or accommodations based on a disabled person's *physical ability* to make use of those goods, services, etc." (emphasis added). *Id.* at 620. *Contra Carparts Dist. Ctr., Inc. v. Automotive Wholesalers Assoc. of New England, Inc.*, 37 F.3d 12 (1st Cir.1994).

■ Because the plaintiff's claim in *Pappas* had nothing to do with an inability to make physical use of the services of a place of public accommodation, the court dismissed plaintiff's claims under Title III of the ADA. Likewise, in the present case, there is no nexus whatsoever between the plaintiff's alleged discrimination and her inability to make physical use of any of MetLife's services. Because this Court also finds that the scope of Title III only addresses discrimina-

---

7. In her response to Schering-Plough defendants' Motion to Dismiss, plaintiff cites Title III as providing that insurers "may not refuse to insure, or refuse to continue to insure, or limit the amount, extent, or kind of coverage available to an individual, ... solely because of [an individual's] physical or mental impairment." (Response at 9 (citing H.R.Rep. No. 101–485, part 2, 101st Cong., 2d Sess. 129 (1990). However, the ADA's provisions addressing discrimination in employee health insurance plans are found in Title V of the Act, entitled Miscellaneous Provisions. Title V § 501 is entitled "Construction" and contains a provision discussing the interplay between the statute's nondiscrimination provisions and employee health benefit plans. Section 501(c) states in pertinent part that Titles I, II, and III of the ADA shall not be construed to prohibit or restrict—

> (1) an insurer, hospital or medical service company, ... or entity that administers benefit plans, ... from underwriting risks, ... that are based on or not inconsistent with State law; or
> (2) a person or organization covered by this chapter from establishing, sponsoring ... or

administering the terms of a bona fide benefit plan that are based on underwriting risks, ... that are based on or not inconsistent with state law;

provided that points (1) and (2) are not used as a subterfuge to evade the purposes of titles I, II, and III of this legislation. *See* 42 U.S.C. 12201(c).

The legislative history of Title V reiterates that the main purposes of the ADA include prohibiting discrimination in employment, public services, and places of public accommodation and that no provisions of the ADA should affect the way the insurance industry does business in accordance with the State laws and regulations under which it is regulated. *See* S.Rep. No. 116, 101st Cong., 1st Sess. 85 (1989). Thus, Title V of the ADA governs the interplay between the Act's anti-discrimination provisions in Titles I, II, and III and health insurance plans offered by employers to their workers, and nothing in the legislative history of the Act suggests that claims may be brought independently under this section of the ADA.

tion based on a disabled person's physical abilities to make use of the goods and services of a place of public accommodation, we find that plaintiff has failed to state a claim against MetLife under Title III of the ADA upon which relief can be granted.

### B. Plaintiff's ADA Title III Claim Against The Schering–Plough Defendants

The Schering–Plough defendants also assert that they are not liable under Title III of the ADA, contending that the Act does not apply to them because Title III was not intended by Congress to govern any terms or conditions of employment by providers of public accommodations. *See* S.Rep. No. 116, 101st Cong., 1st Sess. 58 (1989) ("Title III is not intended to govern any terms or conditions of employment by providers of public accommodations ... employment practices are governed by title I of this legislation.").

Because the legislative history of the ADA clearly indicates that Title III does not govern employment practices, and because there is no nexus whatsoever between the plaintiff's alleged discrimination and her inability to make physical use of any of the services of Schering–Plough defendants plaintiff has also failed to state a claim against the Schering–Plough defendants on which relief can be granted.

Based on the foregoing reasons, defendants' Motions to Dismiss Claims Arising Under Title III of the ADA are GRANTED.

### III.

*Plaintiff's ERISA claims against · MetLife*

Plaintiff challenges MetLife's denial of long term disability benefits allegedly due her under the plan pursuant to 29 U.S.C. § 1132(a)(1)(B).[8] MetLife moves for summary judgment with respect to plaintiff's

ERISA claims, asserting that there is no dispute as to any issue of material fact and that as a matter of law, MetLife's denial of plaintiff's long-term disability benefits after twenty-four months was proper.

In considering MetLife's Motion for Summary Judgment, this Court must determine the proper standard by which to review MetLife's denial of plaintiff's long-term disability benefits. In *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989), the Supreme Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Where the administrator or fiduciary authority has discretionary authority, an abuse of discretion standard applies. *Id.* 489 U.S. at 109–111, 109 S.Ct. at 954; *Perry v. Simplicity Engineering,* 900 F.2d 963, 965 (6th Cir.1990). *See also Davis v. Kentucky Fin. Cos. Retirement Plan,* 887 F.2d 689, 693–94 (6th Cir.1989), *cert. denied,* 495 U.S. 905, 110 S.Ct. 1924, 109 L.Ed.2d 288 (1990), *reh'g denied,* 496 U.S. 932, 110 S.Ct. 2634, 110 L.Ed.2d 654 (1990) (applying arbitrary and capricious standard of review where plan grants discretion to plan administrator).

It is undisputed that the following provision is contained in the Master Policy pursuant to which long-term disability benefits are provided under the Schering–Plough LTD Plan.

### DISCRETIONARY AUTHORITY OF PLAN ADMINISTRATOR AND OTHER PLAN FIDUCIARIES

In carrying out their respective responsibilities under the plan, the plan administrator and other plan fiduciaries shall have

---

**8.** This provision of ERISA allows a plan participant or beneficiary to bring a civil action to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. 29 U.S.C. 1132(a)(1)(B). In Plaintiff's Response to MetLife's Motion for Summary Judgment, plaintiff also requests relief under 29 U.S.C. § 1132(a)(1)(A) for MetLife's alleged breach of its

statutory obligation under 29 U.S.C. § 1132(c)(1)(B). 29 U.S.C. § 1132(c)(1)(B) addresses a plan administrator's refusal to supply requested information and the resulting penalties. *See* 29 U.S.C. § 1132(c)(1)(B). However, as plaintiff has not asserted any facts to support her conclusory allegations that MetLife failed to supply requested information, this Court will not consider plaintiff's claims for damages under 29 U.S.C. § 1132(c)(1)(B).

discretionary authority to interpret the terms of the plan and to determine eligibility for and entitlement to plan benefits in accordance with the terms of the plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the determination was arbitrary and capricious.

Master Policy Claims record at 27.

Because the plan provision at issue in the present case clearly grants the plan administrator and fiduciaries discretion to interpret the terms of the plan and to determine benefit eligibility under the plan, a deferential standard of review is appropriate. *See Baker v. United Mine Workers of Am. Health & Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir.1991) (employing deferential review where plan granted trustee discretionary authority to determine issues concerning eligibility for benefits); *Johnson v. Eaton Corp.*, 970 F.2d 1569, 1570–71 (6th Cir.1992), *reh'g denied*. However, plaintiff asserts that the arbitrary and capricious standard of review is not proper in this case because discretionary authority under the plan is limited only to the Schering–Plough Corporation, whom plaintiff alleges is the plan administrator.[9]

According to the record in this case, however, it is undisputed that MetLife administered benefits to plaintiff under the Scher-

ing–Plough long-term disability plan and that MetLife made the final decision denying plaintiff long term disability benefits under the plan.[10] Thus, plaintiff's arguments that discretionary authority under the plan is limited only to the Schering–Plough Corporation and that MetLife's denial of benefits to plaintiff should not be reviewed under the arbitrary and capricious standard are without merit.

Furthermore, it is undisputed that MetLife is a fiduciary under the plan [11], and the plan's language expressly gives fiduciaries discretionary authority under the plan. Because it is clear that the plan in this case expressly gives discretionary authority to MetLife to determine eligibility for benefits and to construe the terms of the plan, it is proper to review MetLife's denial of benefits to plaintiff under the arbitrary and capricious standard of review.

■ Since this Court has determined that MetLife's denial of benefits to plaintiff must be reviewed under an arbitrary and capricious standard, we must now determine whether, as a matter of law, MetLife's actions comported with this standard. It is well-established that the arbitrary or capricious standard is the least demanding form of judicial review of administrative action. *Davis v. Kentucky Fin. Cos. Retirement*

9. While the plan does state that Schering–Plough is the employer and plan administrator, (Claims Record at 26), plaintiff has not shown that Schering–Plough maintained exclusive discretion with regard to determining eligibility under the plan and construing the terms of the plan. In support of her assertion that discretionary authority under the plan is limited to Schering–Plough, the plaintiff relies on a provision in the Summary Plan Description that states: "Schering–Plough presently offers long term disability benefits to its employees but reserves the right to terminate, suspend, withdraw, amend, or modify benefits in whole or in part and to increase any premiums payable by employees at any time." Claims Record at 29. However, this provision, in and of itself, does not indicate that discretion to determine eligibility for benefits under the plan or to interpret the language of the plan was limited only to Schering–Plough.

10. *See* Plaintiff's Complaint against defendant MetLife at ¶ 4 (defendant [MetLife] provides and/or administers long-term disability benefits to the employees of Schering–Plough Corpora-

tion); Plaintiff's Complaint against Schering–Plough defendants at ¶ 5 (plaintiff was covered under a plan of disability benefits provided by her employer and administered by MetLife); Affidavit of James P. Hartz, MetLife Staff Consultant, admitting MetLife serves as Claims Administrator for the Schering–Plough plan. Furthermore, the fact that MetLife administered benefits to plaintiff under the Schering–Plough plan is evidenced by the plain language of the plan which provides that claim forms are forwarded to MetLife by the employer for processing and that MetLife is responsible for reviewing all claims denied in whole or in part. Claims Record at 25. Additionally, the correspondence with plaintiff informing her of the initial decision to deny her long-term disability benefits under the plan and the subsequent letter affirming the initial denial of benefits came from MetLife's office in Utica, New York. Claims Record at 110 and 131.

11. *See* MetLife's Answer to Plaintiff's Complaint at ¶ 2; Plaintiff's Response to Defendant MetLife's Motion for Summary Judgment at 7.

*Plan,* 887 F.2d 689, 693–94 (6th Cir.1989), *cert. denied,* 495 U.S. 905, 110 S.Ct. 1924, 109 L.Ed.2d 288 (1990).

■ In *Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979 (6th Cir.1991), the Sixth Circuit stated that an "ERISA benefit plan administrator's decisions on eligibility for benefits are not arbitrary and capricious if they are 'rational in light of the plan's provisions.'" *Id.* at 984 (quoting *Daniel v. Eaton Corp.,* 839 F.2d 263, 267 (6th Cir.1988), *cert. denied,* 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 52 (1988)). However, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'factor[ ] in determining whether there is an abuse of discretion.'" *Id.* (quoting *Bruch,* 489 U.S. at 114–15, 109 S.Ct. at 956–57 (citations omitted)).

Because premiums are paid to MetLife by or on behalf of plaintiff under the Schering–Plough plan, plaintiff alleges that it would be adverse to MetLife's financial interests to extend disability benefits to individuals such as the plaintiff. Thus, plaintiff contends that MetLife operated under an alleged conflict of interest in denying plaintiff long-term disability benefits under the plan, and that this Court should apply a de novo standard of review, giving less deference to MetLife's decision.

However, the Sixth Circuit has held that even when there is an alleged conflict of interest by the plan administrator that the arbitrary and capricious standard still applies. *See Wells v. U.S. Steel & Carnegie Pension Fund, Inc.,* 950 F.2d 1244, 1247 (6th Cir.1991), *reh'g denied* (citing *Davis v. Kentucky Fin. Cos. Retirement Plan,* 887 F.2d 689, 694 (6th Cir.1989), *cert. denied,* 495 U.S. 905, 110 S.Ct. 1924, 109 L.Ed.2d 288 (1990)). Therefore, we will apply the arbitrary or capricious standard of review and simply consider MetLife's alleged conflict of interest as one of the factors in our determination of

whether MetLife's denial of benefits was reasonable in light of the Schering–Plough plan provisions.[12]

The Schering–Plough long-term disability plan contains a "primary benefit period" and a "secondary benefit period" both of which are described in the Master Policy. Claims record at 18; *See also* Claims record at 34. For persons like plaintiff, who are younger than sixty-four (64) years of age and whose disability extends beyond twenty-four (24) months, the primary benefit period is twenty-four (24) months, after which a secondary benefit period exists up to the age of sixty-five (65) or seventy (70), depending on how old the claimant was when the disability began. The provision under which plaintiff was denied benefits at the end of her "primary benefit period" provides:

> [N]o monthly benefits will be paid … for any part of the Secondary Benefit Period during which your are not confined as an inpatient in a Hospital, *if your Total Disability in any way results from, or is caused or contributed to by, a mental or nervous disorder.* (Emphasis added).

Master Policy Claims record at 18.

The record before MetLife shows that plaintiff was not confined to a hospital. *See* Dr. Lathram's answer to question 13 in the Supplemental Statement of Functional Capacity. Dr. Lathram executed this statement and sent it to MetLife on April 3, 1993, twelve days before MetLife notified plaintiff of the termination of her benefits effective April 29, 1993. Claims record at 108.[13]

Since plaintiff was not confined to a hospital in April 1993, when MetLife determined her eligibility for long-term disability benefits, MetLife had to determine whether plaintiff's total disability in any way resulted from, or was caused or contributed by, a mental or nervous disorder. Based on plaintiff's primary diagnosis of major depression and plaintiff's symptoms and method of treatment, MetLife's determination that

**12.** In this case, we will review MetLife's denial of benefits based upon the record before MetLife at the time the decision regarding plaintiff's benefits was made. *Perry v. Simplicity Engineering,* 900 F.2d 963, 966 (6th Cir.1990).

**13.** Prior Supplemental Statements of Functional Capacity prepared by Dr. Lathram and contained in the record indicate that plaintiff was hospital-confined for a short period in 1991, but not thereafter. *See* Claims record at 78, 96, and 102.

plaintiff's disability resulted at least in part from a mental or nervous disorder was not unreasonable.

In *Brewer v. Lincoln Nat. Life Ins. Co.,* 921 F.2d 150 (8th Cir.1990), *cert. denied,* 501 U.S. 1238, 111 S.Ct. 2872, 115 L.Ed.2d 1038 (1991), the Eighth Circuit considered whether one suffering from affective mood disorder was subject to a coverage limitations under health benefit policy, which limited coverage for mental illnesses. The court rejected the claimant's arguments that the possible biological causes of the condition at issue excluded it from the policy's definition of "mental illnesses." Finding that the terms of an ERISA plan should be given their ordinary and not specialized meanings, the *Brewer* court stated:

> The cause of a disease is a judgment for experts, while laymen know and understand symptoms. Laymen undoubtedly are aware that some mental illnesses are organically caused while others are not; however, they do not classify illnesses based on their origins. Instead, laypersons are inclined to focus on the symptoms of an illness; illnesses whose primary symptoms are depression, mood swings and unusual behavior are commonly characterized as mental illnesses regardless of their causes.

*Id.* at 154.

Thus, in determining whether the condition could be classified as a "mental illness" under the policy, the *Brewer* court did not focus on the condition's etiology. Moreover, as the policy language did not limit "mental illnesses" to only those with a non-organic origin, the court declined to adopt such a limited construction of the term. *See also Stauch v. Unisys Corp.,* 24 F.3d 1054, 1055 (8th Cir.1994); *Equitable Life Assurance Society v. Berry,* 212 Cal.App.3d 832, 260 Cal. Rptr. 819, 824 (1989). *Contra Kunin v. Benefit Trust Life Ins. Co.,* 910 F.2d 534 (9th Cir.1990), *cert. denied,* 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 587 (1990). The reasoning employed in *Brewer* is consistent with the general federal common law principle requiring courts to give effect to the plain meaning of policies providing benefits through ERISA-regulated plans and is applicable in the present case. *See Arnold v. Life Ins. Co. of North America,* 894 F.2d 1566, 1567 (11th Cir.1990), *reh'g denied,* 903 F.2d 827 (11th Cir.1990); *Evans v. Safeco Life Ins. Co.,* 916 F.2d 1437, 1441 (9th Cir.1990).

After plaintiff received MetLife's letter informing her that her benefits would be terminated as of April 23, 1993, plaintiff informed MetLife that her disability was caused "in large" by a chemical deficiency in the brain. Therefore, plaintiff claimed that her disability could not be considered "completely" as a mental or nervous condition. Claims record at 114.

After considering plaintiff's letter, MetLife, for a second time, denied plaintiff long-term disability benefits under the plan. Upon MetLife's second denial of benefits to plaintiff, Dr. Lathram sent MetLife a letter on May 17, 1993, stating that plaintiff "has chronic major depression and all evidence indicates that this is a chemical disorder of a deepseated nature." Claims record at 118.

MetLife then referred the file to its consulting psychiatrist, Josef H. Weissberg, M.D. Dr. Weissberg reviewed plaintiff's file and stated the following:

> Irrespective of any chemical factors in its etiology, major depression is a DSM III diagnosis; Ms. Parker is being treated by a psychiatrist with psychoactive medications. In my opinion, her major depression should be reimbursed under the nervous/mental illness clause of the contract.

Claims record at 122.

Based upon its review of all information submitted by plaintiff and her health care provider and the review by Dr. Weissberg, MetLife ultimately determined that plaintiff's total disability resulting from major depression and anxiety was characterized as having in some way resulted from or having been caused by or contributed to by a mental or nervous disorder.[14]

---

**14.** On June 15, 1993, MetLife informed plaintiff of its final decision to deny her claim for long-

term disability benefits. Claims record at 131.

Based on a thorough review of the record that was before MetLife when it made its final determination denying plaintiff long-term disability benefits, this Court finds that MetLife's decision was reasonable in light of the Schering–Plough plan provisions—despite any alleged conflict of interest on MetLife's part. The broad language of the provision under which plaintiff was denied long-term disability benefits clearly states that if a claimant's disability "in any way results from, or is caused or contributed by, a mental or nervous disorder," which does not result in the claimant being confined as an inpatient in a hospital, then benefits are not payable in the secondary period. The provision says nothing about what the origin or cause of the mental disorder must be, and under *Brewer*, MetLife properly determined that regardless of the origins of plaintiff's depression that plaintiff should be reimbursed under the nervous/mental illness clause of the policy. *See Brewer* 921 F.2d at 154.

Considering the breadth of the Schering–Plough plan provision, in light of the fact that plaintiff was being treated by a psychiatrist with psychoactive medications, MetLife's denial of benefits to plaintiff was not arbitrary or capricious under the circumstances. The Sixth Circuit has stated that "[w]ithout a showing of internal inconsistency or bad faith or some other ground for calling the [administrator's] determination into question, the arbitrary and capricious standard demands affirmance of an administrator's construction of a plan." *Sutter v. BASF Corp.*, 964 F.2d 556, (6th Cir.1992) (citing *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 695 (6th Cir.1989), *cert. denied*, 495 U.S. 905, 110 S.Ct. 1924, 109 L.Ed.2d 288 (1990)). Thus, as there is no dispute as to any issue of material fact and plaintiff has not shown that MetLife's determination was unreasonable, inconsistent, or made in bad faith, MetLife's

denial of long-term benefits to plaintiff must stand. Therefore, MetLife's Motion for Summary Judgment regarding plaintiff's ERISA claims is hereby GRANTED.

## IV.

*Plaintiff's ERISA claims against the Schering–Plough Defendants:*

▮▮▮ Although plaintiff's complaint does not identify specific provisions of ERISA that the Schering–Plough defendants are alleged to have violated, the nature of plaintiff's ERISA claims appears to be an action for wrongful denial of benefits under section 502(a)(1)(B).[15] Section 502(a)(1)(B) of ERISA provides that a participant or beneficiary of a plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of his plan, or to clarify his rights to future benefits under the plan[.]" 29 U.S.C. § 1132(a)(1)(B).

Defendants assert that plaintiff's claims under section 502(a)(1)(B) of ERISA should be dismissed because an employer is not a proper defendant under this section of ERISA, or in the alternative, that the plaintiff must also include the plan itself as party in order to obtain relief under this section.

However, in *Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir.1988), *cert. denied*, 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 52 (1988), the Sixth Circuit found that an employer is a proper party defendant in an action for benefits if it is shown that the employer controls the administration of the plan. *See also Renney v. White Consol. Indus., Inc.*, No. G88–408 CA1, 1990 WL 482748 at *7 (W.D.Mich. Apr. 8, 1990), *aff'd*, *Renney v. A.B. Electrolux*, 952 F.2d 403 (6th Cir.1992) (finding an employer is a proper party defendant under section 502(a)(1)(B) because while

**15.** Because plaintiff claims that the Schering–Plough defendants allegedly breached a fiduciary duty to her, (Plaintiff's Response to Schering–Plough defendants' Motion to Dismiss at 10), it may appear that plaintiff seeks to bring a claim against defendants under section 409(a) of ERISA, which establishes liability for breach of fiduciary duty. *See* 29 U.S.C. § 1109(a). While it is disputed whether defendants are fiduciaries under ERISA, even assuming that defendants are

fiduciaries, section 409(a) provides relief only for a plan and not for individual participants. *Tregoning v. American Community Mutual Ins. Co.*, 12 F.3d 79, 83 (6th Cir.1993) (citing *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). Thus, plaintiff fails to state a claim against Schering–Plough defendants for which relief can be granted under section 409(a) of ERISA.

ERISA provides that an employee benefit plan may be sued as an entity, 29 U.S.C. § 1132(d)(1), the statute does not explicitly identify the proper party defendant in a suit by a plan beneficiary for the recovery of benefits under a plan).

Furthermore, in *Renney*, the court also found that plaintiff's failure to name the plan as defendant was not fatal to plaintiff's action because the employer had sufficient notice that it was a defendant in its capacity as administrator. Thus, the employer, as the plan administrator, was a proper party to the suit. *Id.*

In the present case, the Court will treat defendants' motion to dismiss plaintiff's ERISA claims as a Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure because it is necessary to look at Schering–Plough's long-term disability plan to determine whether the Schering–Plough defendants administered the plan with respect to the plaintiff in this case. In this case, the Schering–Plough defendants, as the moving party, have not shown that they are not the plan administrator. While this fact is disputed, it is not material because this Court has determined that the administration of the plan with respect to plaintiff did not violate ERISA.[16] Thus, any ERISA claims against the Schering–Plough defendants must fail regardless of whether the Schering–Plough defendants were also plan administrators in conjunction with MetLife. Thus, plaintiff's ERISA claims against the Schering–Plough defendants are hereby DISMISSED.

## V.

*Plaintiff's State Law Claims Against Schering–Plough Defendants:*

 Plaintiff's complaint asserts claims for breach of contract and negligent and intentional infliction of emotional distress. 29 U.S.C. § 1144 clearly states that ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." The Sixth Circuit has repeatedly held that virtually all state law claims relating to an employee benefit plan are preempted by ERISA. *Cromwell v. Equicor–Equitable HCA Corp,* 944 F.2d 1272, 1276 (6th Cir.1991), *cert. dismissed,* —— U.S. ——, 113 S.Ct. 2, 120 L.Ed.2d 931 (1992). Additionally, a state law "relates to" an employee benefit plan "if it has a connection with or reference to such a plan." *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 87, 103 S.Ct. 2890, 2895, 77 L.Ed.2d 490 (1983).

Specifically, in *Tassinare v. American Nat. Ins. Co.,* 32 F.3d 220, 224 (6th Cir.1994), the Sixth Circuit held that employees' claims for breach of contract and intentional infliction of emotional distress arising from an employer's failure to make matching payments to a pension plan "related to" the plan and were preempted by ERISA. In the present case, plaintiff alleges that her claims for breach of contract and negligent and intentional infliction of emotional distress arise from defendants' failure to pay benefits under the Plan. Thus, plaintiff's state law claims "relate to" the plan and are preempted by ERISA. Because plaintiff's state law claims are clearly preempted by ERISA, plaintiff has failed to state a claim under state law on which relief can be granted. Therefore, the Schering–Plough defendants' motion to dismiss plaintiff's state law claims is GRANTED.

## Conclusion

For the reasons stated above, this Court hereby GRANTS defendant MetLife's Motion to Dismiss All Claims Arising Under the ADA, GRANTS defendant MetLife's Motion for Summary Judgment, regarding plaintiff's ERISA claims, and GRANTS defendants Schering–Plough Corporation and Schering–Plough Health Care Products Inc.'s Motion for Summary Judgment.

SO ORDERED.

---

**16.** *See* Part III. of this Order, granting MetLife's Motion for Summary Judgment regarding plain-

tiff's ERISA claims.